PITTMAN *v*. STATE.*

(Division A.    June 13, 1927.)

[113 So. 348.    No. 26294.]

1. CRIMINAL LAW. *If all instructions fully and fairly state law, court will not reverse, though instructions considered separately are subject to criticism.*

   All instructions, both those granted to state and defendant, must be considered together, one as supplementing, modifying, and explaining another, and, if, when so considered, instructions fully and fairly state law applicable to facts in evidence, court will not reverse, though instructions considered separately may not be free from criticism.

2. CRIMINAL LAW. *Statement of district attorney referring to widow and broken heart of deceased's mother and to defendant's counsel trampling on bloody clothes of deceased held not to require reversal.*

   147 Miss.—38.

594          Pittman *v.* State.          [Sup. Ct.

In prosecution for murder, remarks of district attorney in closing argument, requesting conviction because defendant had made deceased's wife a widow and had broken the heart of his old mother, and referring to defendant's counsel trampling on bloody clothes of deceased, *held* not to require reversal.

3. Criminal Law. *Trial judge's action on motion for new trial filed after adjournment, is not properly part of record on appeal.*

Any action of trial judge after adjournment of term in reference to motion for new trial filed thereafter was of no effect, and is not properly part of record on appeal.

4. Criminal Law. *Defendant cannot complain that court adjourned term without opportunity to present motion for new trial, where counsel did not request delay therefor.*

Defendant in murder trial cannot complain on appeal that court adjourned term without opportunity to present motion for new trial, where verdict was returned into court in presence of able associate counsel, and record fails to show that there was any request for delay in order to enable them to present such motion, or that court was given any indication that they desired to present it.

5. Courts. *Trial court had power to extend term to conclude murder trial, notwithstanding time for court to convene in another county (Hemingway's Code, section 729).*

Under Code 1906, section 1009 (Hemingway's Code, section 729), judge of circuit court had power to extend term for purpose of concluding trial · of murder case, begun during term and not concluded by time fixed by law for expiration thereof, notwithstanding that court was supposed to convene in another county of same district.

---

*Corpus Juris-Cyc. References: Courts, 15CJ, p. 887, n. 6, 7; Criminal Law, 16CJ, p. 909, n. 52; p. 1049, n. 81, 82; p. 1050, n. 84; p. 1053, n. 93; 17CJ, p. 89, n. 58; p. 124, n. 22; p. 125 n. 30.

Appeal from circuit court of Forrest county.

Hon. R. S. Hall, Judge.

Hardin Pittman was convicted of murder, and he appeals. Affirmed.

*Paul B. Johnson* and *J. E. Davis,* for appellant.

*James W. Cassedy, Jr.,* Assistant Attorney-General, for the State.

Argued orally by *Paul B. Johnson*, for appellant, and *Jas. W. Cassedy, Jr.*, for the state.

COOK, J., delivered the opinion of the court.

The appellant, Hardin Pittman, was convicted in the circuit court of Forrest county on a charge of murder, and was sentenced to the state penitentiary for life, and, from this conviction and sentence, he has prosecuted this appeal.

In the city of Hattiesburg, Front and Pine streets are parallel, and intersect Main street at right angles, with one block intervening between them. The Carter building is located at the corner of Front and Main streets, and the Davidson building is located in the same block and at the corner of Main and Pine streets, both buildings fronting on Main street. O'Ferrall Bros.' store is located about the center of this block and also fronts on Main street. The fatal encounter occurred on the Pine street side of the Davidson building a short distance from the corner of Main and Pine streets, and the facts as detailed by the state's witnesses are, in substance, as follows:

On Saturday night, while many people were on the streets of the city of Hattiesburg, the deceased, Stuart Havens, with two companions, left the Gem Restaurant on Front street and walked toward Main street. Before reaching Main street they met the wife of the deceased, and the four persons walked on together to the corner of Front and Main streets, and there turned up Main street in front of the Carter building. At that point they passed the appellant and his companion, Ray McKinney, and as they passed these parties Mrs. Havens remarked, "It is raining, and the awnings are not down." The appellant then said, "No; they are not down; but we will have them put down for you, Sugar." Thereupon Havens said to Pittman, "Do you know who you are talking to? This is my wife you are talking to." Pittman then re-

plied, "I haven't said a damn word to your wife." The deceased and his companions then proceeded up the street, and the appellant and his companion followed them. About in front of the O'Ferrall store the appellant said, "I am not scared of any son of a bitch in Hattiesburg." The deceased then said, "Don't use that language before my wife; get ahead;" and thereupon he caught the appellant by the shoulder and pushed him ahead of them. When they arrived at the Davidson corner they all stopped, and the appellant said, "This is as far as I am going;" and the deceased then told him to go on down the street. The appellant replied, "I don't have to," and thereupon the deceased pushed him around the corner. When they got around the corner on Pine street, the appellant's companion said to the deceased, "I don't believe you have got any damn wife;" and then said, "I will admit I am in the wrong, let's shake hands and be friends;" and the deceased replied, "All right." Mrs. Havens then came around the corner and asked her husband to go with her, and they returned to the front of Davidson's store.

Some controversy then ensued between the appellant and Barlow and Cochran, and the appellant said that he was not afraid of any man in Hattiesburg, and that he wanted to fight, and thereupon pulled off his coat. Cochran then stepped up, and said, "No; you can't whip me; I can whip any two of you; and if you want to fight, fight me;" and thereupon he pulled off his coat and caught the appellant by the front of his shirt. The appellant then said, "If you will turn me aloose, I will go on." Cochran then turned him loose, and the appellant walked ten or twelve feet down the Pine street sidewalk. The deceased saw this disturbance through the glass front of the Davidson building, and said to his wife, "This is my affair, and I am going back around there;" and then he pulled off his coat and proceeded around the corner, saying, "I thought you had dropped this." The appellant then came back to Havens and struck him, and then

Havens struck at the appellant, and they clinched and fell to their knees, fighting. In a very short time they both got up, and Havens leaned against the wall of the Davidson building, being very bloody. At this moment a witness, McSwain, stepped between these parties, and then the appellant reached around McSwain and struck the deceased one blow in the stomach. Havens then sank to the sidewalk, and died before he could be removed to a hospital in an ambulance, which was immediately called. The deceased was stabbed twice in the back, once in the abdomen, just below the belt, and once in the leg; the latter wound severing the femoral artery and vein, and being the immediate cause of his death. None of the witnesses knew that the appellant had a knife until the altercation was practically over. One witness testified that, when the appellant started toward Havens, he saw him (the appellant) put his hand into his pocket and draw it therefrom, but he did not see a knife in the hand. There was testimony to the effect that after the difficulty the appellant proceeded down Pine street to the offices of the Western Union Telegraph Company, having the knife in his hand.

The version of the affair, as testified to by the appellant and his witnesses, is, in substance, as follows:

That the appellant said nothing to Havens or any one in his party when they were in front of the Carter building; that Havens there walked up to the appellant, and said, "I want you to stop flirting with my wife;" and he replied, "What are you talking about? I've not said anything to your wife;" that Havens replied, "Get on down the street;" and then pushed, kicked, and cursed him, and required him to proceed ahead of Havens' party to the Davidson corner; that the deceased there had an altercation with a Mr. Crowe about some one trying to flirt with his wife; that Mrs. Havens came to them and carried her husband back to the front of the Davidson building; that the altercation between the appellant and a third party then occurred, and that he told this party

he did not want any trouble, and would go on down the street if he would turn him loose; that the deceased then again appeared on the scene and struck the appellant; that a friend of the appellant then caught him by the arm and started down the street with him, when Havens jerked this friend off the sidewalk and again struck the appellant; that he then fell to his knees with Havens; that Havens was striking him in the face and choking him, and then Cochran also jumped on him and caught him by the neck; that he then got out his knife and began cutting at his assailants; that during the struggle one of his assailants caught his hand and twisted the knife out of it, and in doing so cut his (the appellant's) hand severely, and he did not see the knife again and did not strike Havens with the knife after they regained their feet. The appellant testified that he cut the deceased because he believed he was in imminent danger of losing his life or suffering some great bodily harm at the hands of his two assailants, and that it was necessary to do so in order to save himself from this danger.

The first assignment of error argued by counsel for the appellant is based upon alleged errors in several of the state's instructions. Some of the criticisms of these instructions are hypercritical and technical, while others are not without merit, if the instruction criticized stood alone and was not to be considered in connection with the whole body of instructions granted for both the state and the defendant; but we will not discuss the several instructions separately and in detail. We have examined and carefully considered each criticism of the instructions, and have reached the conclusion that no reversible error was committed in granting the instructions for the state. All the instructions, both those granted to the state and the defendant, must be considered together, one as supplementing, modifying, and explaining another, and when so considered, if the instructions fully and fairly state the law applicable to the facts in evidence, the court will not reverse, although the instruc-

tions when considered separately may not be free from criticism. In the case at bar the killing was admitted, and the whole theory of the appellant to justify his acts is based upon the right of self-defense. The appellant .was granted twenty-two skillfully drawn instructions which accurately and repeatedly presented in varying language every phase of the law of self-defense. There was testimony to show that the deceased was a very large man, while the appellant was a small man, and the jury was instructed that—"Although the deceased, Havens, and Cochran did not use any other force than their bodies on defendant, yet you may take into consideration the physical size and strength of the three men, Cochran, Havens, and Pittman, and if you believe from the evidence, or have a reasonable doubt of same, that it reasonably appeared to Pittman, at the time he cut and wounded Havens, that he was in danger of great bodily harm at the hands of Havens, then he had a right to cut the deceased and to continue to cut him so long as it reasonably appeared to him that he was in danger of great bodily harm or of losing his life."

Every phase of the law of self-defense was fully and fairly covered in numerous other instructions, and we are of the opinion that, when all of the instructions are considered together, no reversible error is found therein.

The appellant next assigns as error certain statements made by the district attorney in his closing argument. In a special bill of exceptions the statements complained of are set forth as follows:

"Gentlemen of the jury, you ought to convict this man because he has made this widow," pointing to the widow. "You ought to convict him because he has broken the heart of this old mother," pointing to her. And during the course of the argument the district attorney looked at one of the counsel for the defendant, and said: "Look at him; did you see him trample upon the bloody clothes of the deceased; he has no more respect for the deceased than that, and to trample upon the clothes of the deceased

before the old mother and the widow of the deceased; is that the kind of lawyer he has?''

The record does not show what fact or incident, if any, was the basis of the reference to the defendant's attorney, as quoted above, but we do not think either of the quoted statements would warrant a reversal of the cause.

The next assignment of error is based upon the fact that the trial of the appellant was not concluded on Saturday, November 13, 1926, the date fixed by law for the ending of the November term of the circuit court of Forrest county, but was continued and concluded on Monday, November 15, 1926, the date fixed by law for the convening of the circuit court of Jones county, and the appellant especially complains of the fact that when the jury reported its verdict on Monday night, during the absence of the leading counsel for the defense, the court thereupon sentenced the defendant and immediately adjourned the term of the Forrest county court, thereby depriving the appellant of the opportunity to present a motion for a new trial and testimony in support thereof.

It is stated in the brief of counsel for the defendant that the circuit judge went to Jones county the following day and proceeded with the term of that court, which had been convened on Monday, November 15, 1926, and adjourned over until the following day on account of the absence of the judge. There is much in the brief of counsel in regard to the steps taken on the day following the adjournment of the Forrest county court in an effort to present a motion for a new trial, and evidence in support thereof, and have the same made a part of the record. These facts, however, do not appear of record, and could not be made a part of the record after the term of court was adjourned. When the term of court was finally adjourned, the appellant's right to file a motion for a new trial ended, and any action of the trial judge in reference to such a motion, which was filed after the adjournment of the term, was of no effect, and is not properly a part of this record. The verdict in this case was returned into

court in the presence of able associate counsel for the
appellant, and the record does not show that counsel re-
quested any delay in order to enable them to present a
motion for a new trial, or in any way indicated to the
court that they desired to present any such motion, and
this being true, the appellant cannot now complain that
the court adjourned the term when it had completed all
business before it.

This assignment also presents a question as to the
power of the court to extend a term of the circuit court
for the purpose of concluding the trial of a cause which
was begun during the term and not concluded by the time
fixed by law for the expiration of the term, and also the
effect on this power of the intervention of the time fixed
by law for the convening of the court in another county
of the same district.

Section 1009, Code of 1906 (section 729, Hemingway's
Code), provides that—"When the trial or hearing of any
case, civil or criminal, has been commenced, and is in
progress in any court, and the time for the expiration of
the term as prescribed by law shall arrive, the court may
proceed with such trial or hearing, and bring it to a con-
clusion, in the same manner and with the like effect as
if the stated term had not expired."

This statute first appeared in the Code of 1880 (sec-
tion 2292), and it was construed in the case of *Whitten*
v. *State,* 61 Miss. 717, where it was held that under this
statute the court not only had the power to continue to
a conclusion a trial begun but not ended before the time
fixed by law for the adjournment of a term of court, but
that it had no power to dismiss a jury and discontinue
the trial of a felony charge except for a physical or legal
necessity, and that no such necessity was created by rea-
son of the fact that the law provides for the convening
of court elsewhere before the conclusion of the trial.   In
the *Whitten case, supra,* after quoting this statute, the
court said:

''By this section there can be no ending of a term when a trial has been entered upon and is not completed, or at least there can never be any necessity for such ending, because the court, being empowered to continue the term, may do so at its own pleasure.

''But the power to dismiss a jury in prosecutions for a felony can never· depend on pleasure.  Such power is wholly dependent on necessity either physical or legal.  Where there is no necessity there is no power.  Such unquestionably are our adjudications.  It is a contradiction in terms, therefore, to say that the power of continuing the term is optional with the judge.  The trial being begun and the jeopardy encountered, any dismissal of the jury is arbitrary which is not compelled by necessity. If the court may continue at the pleasure of the judge, it is idle to say that necessity compels the discharge of the jury pending the. trial on the ground only that the law speaks of a court being held elsewhere.

''Court is never obliged to meet elsewhere so long as a trial is progressing where it then is.

''Whenever the court may prolong a term it must do so, since the prisoner by his silence consents to·nothing.''

In the case of *Smith & Cavin* v. *State,* 61 Miss. 754, the court said:  ''The court closed while this case was under consideration, and thereupon the term was regularly prolonged by the necessary order by virtue of section 2292 of Code of 1880.  It was entirely proper, therefore, to continue the trial on the next Monday, as was done, nor did the fact that such day was the time fixed for a special term in that county, under the act of the legislature, in any manner affect the result.''

A similar view was expressed in the case of *Helm* v. *State,* 66 Miss. 537, 6 So. 322, and these cases are decisive in favor of the view that the court below committed no error in continuing and concluding this trial after the time fixed by law for the adjournment of the term.

The judgment of the court below will therefore be affirmed.

*Affirmed.*