## BOYDSTUN v. PRESLEY

No. 42349          May 28, 1962          141 So. 2d 561

*Boydstun & Boydstun,* Louisville, for appellant.

*Charles D. Fair,* Louisville, for appellee.

Lee, P. J.

The matter here in controversy involved the sum of $400, plus interest and attorney's fees, and arose in this way: Joe Lyon entered into a contract with Salathiel Presley to build and construct, according to Acme Building Supply Blueprint, ''The footings and foundation and complete 'black-out' job consisting of blacking out with felt the entire house, subflooring of approximately 2700 square feet, all inside studs, com-

plete roofing, chimney and fireplace complete, and the setting in of all exterior windows and exterior door facings. The contract also includes the construction of the blockouts for the cornice boards and the cornice facings except the cornice ceilings. The total contract price for this construction is Fourteen Hundred (1400.-00) Dollars.'' Presley was to furnish all materials and deliver the same to the site, and was to make payment for the work in two installments of $500 each as the work progressed, as stipulated, and a final payment of $400, evidenced by a note, due thirty days after completion of the contract. The two installments were paid. But Presley, because of alleged defects in the work, declined to pay the note when it became due. Lyon assigned the past due note to R. W. Boydstun, Jr. for a credit of $350 on his account; and Boydstun instituted suit for collection of the note, interest, and attorney's fees.

The pleadings, as made up, presented an issue as to whether or not the work, as performed by Lyon and his employees, was done in good workmanship style. The plaintiff affirmed that it was, and the defendant charged that it was not.

■■ ■ Salathiel Presley was called as an adverse witness for cross-examination, and he detailed his complaints as follows: There were a number of leaks in the valleys because the roof was improperly laid, and there was no flashing used around the chimney. The hearth was exposed more on one side than on the other. The window jambs were cut too narrow and short. There was a swag in the kitchen floor and a bow in the den floor. Numerous studs were omitted. The plans called for them to be erected on 15-inch centers, but there was no uniformity, and some were ten inches apart while the space between others was twenty-one inches. No ventilators were placed in the foundation. Many of the walls were not straight; and because of

this irregularity the bathtub would not fit. About three-fourths of the time smoke would not go up the chimney and the doors had to be opened. He said that he gave no orders about the roof ridge. On his direct examination, Presley was more elaborate in describing the alleged defects. Besides, he denied the claim of Lyon that certain changes were made at his instance.

Corroborating evidence as to the defective and leaky roof was given by James Harrell, who claimed to be an experienced roofer. It was his opinion that it would cost between $400 and $500 to correct such defects. Fred Nabors, who appraised the place, testified that the valleys were faulty and the workmanship defective. He saw the house just after a rain and observed that it was leaking. He also gave corroboration as to the chimney, hearth and window casings. Bernard Whiteside, a neighbor, corroborated Presley's version in practically all particulars, including the failure of the chimney to draw properly.

Joe Lyon testified in detail that he did everything in accordance with the plan except such as Presley, or his father, acting for him, changed; that he left off the flashing around the chimney because Presley told him to do so; that he was in the house during a rain, and there were no leaks at that time; and that the nails in the roof ridge were used because Presley was afraid the shingles would blow off. He admitted that there was a slight defect in the hearth and the chimney, and said that he offered to remedy it if Presley would get some more brick, but that he declined to do so. George Eichelberger, an employee of Lyon, corroborated his employer's version in all particulars.

Thus the factual issue as to defects and good workmanship was in sharp dispute. The court gave a number of instructions, which fairly presented the law on that issue. No complaint whatever was made as to them. The jury found a verdict for the defendant, and a judg-

ment to that effect was promptly entered on the minutes.

The trial was commenced and concluded on July 19, 1961. Upon the return of the verdict, the plaintiff made a motion for a new trial on the ground that the verdict was against the overwhelming weight of the evidence. This motion was overruled.

Thereafter on September 5, 1961, the plaintiff filed a paper styled "MOTION FOR NEW TRIAL ON NEW-LY DISCOVERED EVIDENCE AND PROOF OF PERJURY." The alleged perjurers were Fred F. Nabors, Salathiel Presley and James Harrell.

As to Nabors, the motion in fact said that this witness, on cross-examination during the trial, testified that he took approximately 2,700 square feet as the area of the house, and, using a unit value in square feet, he put an estimated value, after correction of the deficiencies and completion, of $12,500, when the witness had already made an appraisal for Jackson Life Insurance Company, Memphis, Tennessee, showing the house not completely finished but of the value of $18,200. He attached what purported to be a photostatic copy of the alleged report. However, the same did not show to whom the report was made. Nor was its genuiness accounted for.

As to Salathiel Presley, the motion said that Presley in effect testified that he did not see a copy of the appraisal or know the amount thereof; that he did not know the amount of the loan which he obtained or the monthly payments; and that he did not know the cost of material that went into the construction of the house, when he, in fact, had advised with Nabors about the report, executed the note and deed of trust to secure the amount of the loan in the sum of $9,000, had made four monthly payments on the loan, and knew the exact and approximate cost of all materials.

As to James Harrell, the motion said in effect that this man was an itinerant laborer on the Welfare Rolls

of Noxubee County, with a general reputation in the community where he lives as being "a no-account bum, totally unreliable and irresponsible."

The motion was overruled by the judge in vacation on September 25, 1961.

Boydstun appealed, and has assigned as error the action of the court in overruling his motions for a new trial.

As to the first motion, filed during the term of court, it is sufficient to say that the issue was clear cut and sharply disputed. Obviously the factual situation was for determination by the jury. Kirkwood, et al., d. b. a. Kirkwood Furniture Store v. Hickman, 223 Miss. 372, 78 So. 2d 351. Manifestly the verdict was not against the overwhelming weight of the evidence, and the court properly overruled the motion.

As to the motion for a new trial, which was filed after the adjournment of court, there are at least two reasons why the court was right in overruling the same, namely, because (1) the motion was insufficient; and (2) the motion was filed after the court had adjourned.

The motion here under consideration was a mere pleading, not even made under the solemnity of an oath. The issue before the jury in the trial was whether or not the house was constructed according to good workmanship, not the appraised value of the same, nor the amount of the consideration of the deed of trust, nor the amount of the monthly payments, nor the cost of materials. If the witnesses, in their cross-examination, made mistakes in those matters, or even if their statements in those particulars did constitute false swearing, such statements were not, in fact, material to the issue before the court. The resulting impeachment, if such it was, would go only to immaterial matters. It must be remembered also that no aspersion whatever was cast on the testimony of Bernard Whiteside, who testified positively and directly to leaks in

the roof, the defective condition of the window casings and jambs, and the condition of the chimney with smoke backing out into the house.

In Redmond v. Marshall, 162 Miss. 359, 137 So. 733, the opinion pointed out that the party, who seeks a new trial on the ground of newly discovered evidence, must satisfy the court that such evidence has come to his knowledge since the trial, that its discovery was not due to a want of diligence on his part, and that the new evidence will probably produce a different result, if a new trial is granted. The opinion also said: "Newly discovered evidence which is merely cumulative, or which simply tends to impeach one or more witnesses, is not ground for a new trial; and evidence of the same kind as that already given, to the same point, is cumulative, and not merely corroborative", citing four Mississippi cases. See also Trotter v. Staggers, 201 Miss. 9, 28 So. 2d 237; Black v. Stone County Lumber Company, 216 Miss. 844, 63 So. 2d 405; Hutto v. Kremer, 222 Miss. 374, 76 So. 2d 204; Jones v. State, 229 Miss. 437, 91 So. 2d 269.

Besides, only twelve days are scheduled for the term of Circuit Court in Winston County, which convenes on the Second Monday of July. The case was tried on July 19, 1961. The motion was not filed before the court adjourned. Actually, it was filed on September 5, 1961, long after the court had adjourned.

When a term of court is finally adjourned, a party's right to file a motion for a new trial ends. Pittman v. State, 147 Miss. 593, 113 So. 348; Dobbs v. State, 200 Miss. 595, 27 So. 2d 551; National Casualty Company v. Calhoun, 219 Miss. 9, 67 So. 2d 908; Thornhill v. State, 240 Miss. 131, 126 So. 2d 527.

There was no error in the court's refusal to grant a new trial, and the judgment must therefore be affirmed.

Affirmed.

*Gillespie, McElroy, Rodgers* and *Jones, JJ.,* concur.