## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CT-01431-SCT

*MULDROW MANN MCGRAW, JR.*

*v.*

*STATE OF MISSISSIPPI*

### ON PETITION FOR WRIT OF CERTIORARI

| | |
|---|---|
| DATE OF JUDGMENT: | 11/23/93 |
| TRIAL JUDGE: | HON. EUGENE M. BOGEN |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | THOMAS E. ROYALS |
| | CYNTHIA A. STEWART |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: JOLENE M. LOWRY |
| DISTRICT ATTORNEY: | NA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 2/13/97 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 3/6/97 |

### EN BANC.

### BANKS, JUSTICE, FOR THE COURT:

¶1. We granted certiorari in this case in order to clarify the law regarding judgments notwithstanding the verdict in criminal cases. We are required to consider the temporal limits for motions requesting that relief and the effect of granting that relief from the standpoint of the Double Jeopardy Clauses of the Constitutions of the United States and the State of Mississippi. Our conclusions are that: (1) prior decisions of this Court have established that a judgment notwithstanding the verdict is available to the defendant in criminal cases where there is a guilty verdict or the failure to reach a verdict; (2) a motion for such a judgment must be made within the time allowed for motions for new trial; (3) relief granted on motions made outside of the allowable time period, where the jury was unable to reach a verdict, will be deemed pretrial motions for double jeopardy purposes subject to correction by the trial court or by this Court. Applying these conclusions to the case at bar we affirm the judgment of the trial court finding McGraw guilty as charged.

### I.

¶2. McGraw was originally indicted by the grand jury of the Washington County Circuit Court on November 20, 1992, for aggravated assault, and the cause was tried initially before Circuit Judge Gray Evans on August 5th and 6th, 1993. McGraw asked for a directed verdict at the close of the State's case and the court ruled against the motion. After deliberation, the jury returned and advised the trial court that they were unable to reach a verdict. Thereafter, Judge Evans declared a mistrial which was evidenced by his filing an order of mistrial on August 6, 1993.

¶3. On September 15th, 1993, almost five weeks post-trial, McGraw submitted a Motion to Reconsider Motion for Directed Verdict. That motion was sustained and an Order of Dismissal was signed by Judge Evans on November 1, 1993, almost two months post-trial and two court terms following the entry of the order of mistrial.

¶4. The following day, November 2, the State filed a motion to reconsider the grant of the directed verdict, and Judge Evans, that same day, November 2, ordered that the November 1 dismissal be set aside and "held for naught." Thereafter, the case was set for trial on November 22, 1993. Judge Evans denied McGraw's motion for j.n.o.v. on November 17, 1993. McGraw was retried on November 23, 1993, resulting in a conviction for aggravated assault and a twenty year sentence.

¶5. McGraw filed an appeal urging that the retrial which resulted in his conviction violated jeopardy provisions of the state and federal constitutions and the Court of Appeals, upheld McGraw's conviction. This Court granted certiorari.

## II.

¶**6.** McGraw and Rosalie Drago lived together in a mobile home for about six and one-half years. According to the testimony of McGraw, on the morning of October 24, 1992, Drago had an epileptic seizure during which she possibly hit her head. Her co-worker, Lynn Nichols, testified that when Drago arrived at work that day "she was fine; in a good mood . . . ready to go to work," and that she worked a full shift.

¶7. When Drago arrived home that evening and saw that McGraw was still drinking beer, as he had been doing throughout the day, she became angry at him. When Drago went to bed, she awoke McGraw, and he attempted to kiss her. According to the testimony of McGraw, she became angry and clawed McGraw's face with her fingernails. She then allegedly began "punching and swinging and clawing and hitting" at him. McGraw then "slapped" her twice, and the second time caused Drago to fall from the bed and allegedly hit her head on a door facing. While Drago lay on the floor, McGraw then kicked her. She raised herself from the floor and returned to the bed. McGraw went into their living room and fell asleep in his recliner.

¶8. At approximately 3:00 a.m. and again at 5:30 a.m., McGraw tried to awaken Drago. When Drago did not respond for the second time, McGraw became worried and went to James Watson's mobile home in order to get help. A call was made for emergency help.

¶9. Lamar Gardner and Marilyn Lance-Flora, two of the emergency personnel, testified at trial that McGraw told them that he had struck Drago with his fist. Drago was taken to the hospital where she was treated by Dr. Andre Solomon, a neurosurgeon. Dr. Solomon testified that in his expert opinion Drago "was severely injured." Dr. Solomon also testified that Drago suffered severe injury to her

brain stem, and a large blood clot had formed on the right side of her brain which caused swelling of the brain around the clot.

¶10. Dr. Solomon further testified that it would not have been possible for Drago to have reported to work on October 24, 1992, if she had suffered those injuries as a result of the alleged seizure that morning. Rosalie Drago remained in a coma for several months after the incidents which occurred on October 24 and 25, 1992. She later died from complications of the brain damage she sustained. On November 20, 1992, McGraw was indicted for aggravated assault.

### III.

¶11. McGraw argues that his second trial, following an interim order of dismissal, placed him in double jeopardy. To summarize, McGraw argues that pursuant to Mississippi case law, and decisions of the United States Supreme Court, when a court dismisses criminal charges against a defendant on the merits, even if by mistake, the dismissal amounts to an acquittal and the defendant may not again be put to trial, he cites, *Burks v. United States*, 437 U.S. 1 (1978); *Fong Foo v. United States*, 369 U.S. 141 (1962); *Sanabria v. United States*, 437 U.S. 54 (1978); *Reed v. State*, 506 So. 2d 277 (Miss. 1987); *Estes v. State*, 502 So. 2d 1184 (Miss. 1987).

¶12. McGraw argues that when the trial court entered the Order of Dismissal on November 1, 1993, the trial ended with his acquittal, and his double jeopardy rights precluded a subsequent retrial for aggravated assault. Double jeopardy serves to protect a defendant from being twice prosecuted for the same offense. A defendant's double jeopardy right not to be re-prosecuted for the same offense accrues instantly upon the happening of some event in criminal proceedings against him. There are only three possible jeopardy terminating events: (1) an acquittal; (2) a trial court determination of insufficiency leading to a directed verdict of acquittal; and (3) an unreversed determination on direct appeal that there was insufficient evidence to support the conviction. *Vanderbilt v. Collins*, 994 F.2d 189, 195 (5th Cir. 1993), citing *Hudson v. Louisiana*, 450 U.S. 40 (1981) (trial court determination of insufficiency); *Burks v. United States*, 437 U.S. 1 (1978) (unreversed determination on direct appeal of insufficiency).

¶13. A double jeopardy right "attaches" when the jury is sworn and empaneled to hear the case. *Jones v. State*, 398 So. 2d 1312, 1314 (Miss. 1981). In order for his double jeopardy right not to be re-prosecuted for the same offense to accrue, however, the original jeopardy must be "terminated." *Richardson v. United States*, 468 U.S. 317 (1984).

¶14. It is settled law that a court-directed verdict to the jury to find the defendant not guilty has the same effect as a jury deliberated verdict of not guilty. *See e.g.*, *State v. Russell*, 358 So. 2d 409, 412-13 (Miss. 1978); *Agregaard v. Duncan*, 252 Miss. 454, 457, 173 So. 2d 416, 417 (1965); *State v. Thornhill*, 251 Miss. 718, 726, 171 So. 2d 308, 312 (1965).

¶15. "Defendants may be repeatedly retried, however, following mistrial granted because the jury was deadlocked and could not reach a unanimous verdict. (Citations omitted.)" *Beckwith v. State*, 615 So. 2d 1134, 1147 (Miss. 1992).

¶16. The Court of Appeals reasoned that "the issue which must first be determined before addressing any argument that McGraw's double jeopardy rights were violated, is whether the trial court had the

authority in the first place to grant a "Motion to Reconsider Motion for Directed Verdict" after an "Order of Mistrial" had been entered in the case." The Court of Appeals held that, "this Court concludes that the trial judge was without authority to entertain and rule on any motion made subsequent to the order granting a mistrial."

¶17. The Court of Appeals based their conclusion and affirmance of the lower court's conviction on 75 Am. Jur. 2d *Trials* § 907 (1972), citing **Grooms v. Zander**, 144 S.E.2d 909 (S.C. 1965), which held, "[the] circuit court lacked jurisdiction to enter order undertaking to direct a verdict for defendant and dismiss action following declaration of mistrial and discharge of jury because of failure to agree on verdict." According to that court, "[t]he motion for a directed verdict could not be granted after the termination of the trial for the obvious reason that there was no jury to which an instruction for the defendant could have been given." **Grooms**, 144 S.E. at 910.

¶18. The Court of Appeals concluded and held:

> Here, the mistake was that the trial judge granted an "Order of Dismissal" that he was without authority to enter based on the fact that he had previously granted a mistrial in the case. The first trial of McGraw for aggravated assault and any motions made before, during, or after that trial were all null and void. For this reason, the "Order of Dismissal" granted on November 1, 1993, was a nullity. It is as if it was not granted and has no effect. There can be no double jeopardy concerns where no directed verdict of acquittal has been granted.

> Therefore, based on the foregoing discussion of this issue, this Court finds that Muldrow Mann McGraw's double jeopardy rights were not violated by his second trial on the charge of aggravated assault of Rosalie Drago, and accordingly, affirms the conviction and sentence of the Washington County Circuit Court.

¶19. The State argues that, "[t]he grant of the directed verdict, however, would have been a 'jeopardy terminating event' *if* it had occurred within the same term of court *and if* the trial judge had not, upon reconsideration, annulled his grant of the motion." The State claims that the authority of the trial judge to rule on matters involving a case expires at the end of the court term, citing **Griffin v. State**, 565 So. 2d 545, 549 (Miss. 1990) (dispositive portion of circuit court's order granting new trial on two counts of indictment had same finality as judgment and with no further action being taken therein in ensuing regular term of court, circuit court was without authority thereafter to reinstate convictions). *Accord,* **Campbell v. State**, 430 So. 2d 851 (Miss. 1983).

¶20. The State further argues that if the Court of Appeals found the trial court had authority to direct a verdict in this case outside of the July court term, the court also had the authority to set aside, vacate, modify or annul said order, citing **Jones v. Index Drilling Co.**, 251 Miss. 578, 170 So. 2d 564 (1965).

**a.**

¶21. First, we must address the Court of Appeals' assertion that "a trial court may not direct a verdict after a mistrial and the discharge of the jury because of failure to agree on a verdict," citing 75 Am. Jur. 2d *Trials* § 907 (1992); *see also* **Grooms v. Zander**, 144 S.E. 2d 909, 910 (S.C. 1965). The Court of Appeals observed that:

Absent a rule or statute to indicate otherwise, there is no authority to ask the trial court to rule on a motion concerning a trial which has been declared void, nor is there authority to grant such motion.

Rule 50 of the Mississippi Rules of Civil Procedure provides that in cases in which "a verdict is not returned, a party, within ten days after the jury has been discharged, may move for judgment [a JNOV]." M.R.C.P. 50(b). *There is no such rule of criminal procedure which would allow for a post-trial motion for a judgment when no verdict was rendered in the case.*

¶22. This conclusion is contrary to this Court's ruling in *State v. Thornhill*, 171 So. 2d 308 (Miss. 1965), where this Court faced a similar claim:

The State contends that the trial judge had no authority to direct a verdict and dismiss the charge against defendant after the jury had failed to reach a verdict, and had been discharged for the reason that there was no jury to instruct to acquit her. It is also argued that the order of the judge cannot be considered as a judgment non obstante verdicto, because the jury returned no verdict.

*Id*. at 309.

¶23. In that case this Court held that "the trial judge was authorized to sustain a motion and direct a verdict acquitting the defendant and having done so the order of the court protects the defendant from future prosecutions for the crime for which she was acquitted. Miss. Const. § 22 (1890); Miss. Code Ann. §§ 1153, 2443 (1942)." *Id*. at 312.

¶24. Additionally, this Court held in *State v. Russell*, 358 So. 2d 409 (1978) that:

[i]t is elementary that a directed verdict, peremptory instruction and judgment notwithstanding the verdict cannot be granted to the State in a criminal case, *but we see no sound reason why a motion for judgment notwithstanding a verdict of guilty should not be as applicable in criminal cases as a judgment notwithstanding the verdict in civil cases.*

* * *

We, therefore, hold that *the filing of a motion for judgment notwithstanding the verdict of guilty and action thereon by a trial judge is a proper procedure in this state.*

*Id*. at 413. (emphasis added).

¶25. Thus, any claim that the trial court lacked the power to grant a directed verdict (or judgment notwithstanding the fact that the jury was unable to agree) at any time after mistrial, is directly contrary to the holding of *Russell* and the spirit of *Thornhill*. It is not enough to say that the absence of a criminal rule means that a procedure similar to that which exists in the civil rules does not obtain, unless we are willing to say that by adopting the Uniform Criminal Rules of Circuit Practice the court overruled *Russell* with their silence on the matter. The myriad instances in which we have referred to j.n.o.v. in criminal cases since *Russell* would belie that. Additionally, the subsequently adopted M.R.A.P. 4(e) **Post-trial Motions in Criminal Cases** specifically makes reference to a "timely

motion under the Uniform Criminal Rules of Circuit Court Practice . . . for judgment of acquittal notwithstanding the verdict of the jury. . . ."

**b.**

¶26. Timing is the second issue that must be addressed. In *Thornhill,* after the State had introduced evidence and had rested its case, the defendant made a motion for a directed verdict of acquittal. This motion was overruled. The jury was unable to agree and it was discharged. The attorneys for the defendant immediately made an oral motion in substantially the same form as had been previously presented in writing, again asking for a directed verdict of acquittal. *The trial judge took the motion under advisement.* The motion was later reduced to writing. Thereafter, during the *same term of court*, the trial judge entered an order sustaining the petition dismissing the charge.

¶27. The *Thornhill* Court emphasized that the motions and actions taken occurred within the same term of court. At the time *Thornhill* was tried, the law required that motions for new trial be made in the same term. The later adopted uniform rules did not speak to motions for j.n.o.v., the most likely reason being that when the rules were being developed, *Russell* had not yet been decided.

¶28. The question remaining then, is whether the action taken by the court was timely. Judge Evans declared a mistrial which was evidenced by his filing an order of mistrial on August 6, 1993. That order also provided that "the matter is continued until further order of this Court." The court term ended on August 27, 1993. On September 15, 1993, almost five weeks post-trial, McGraw submitted a "Motion to Reconsider Motion for Directed Verdict." That motion was reconsidered and sustained in what was entitled an "Order of Dismissal" signed by Judge Evans on November 1, 1993, almost two months post-trial. The following day, the State filed a motion to reconsider Judge Evans' grant of the directed verdict and Judge Evans ordered that his November 1 grant of the motion for directed verdict (which he called "dismissal") be set aside and "held for naught."

¶29. The State argues that the authority of the trial judge to rule on matters involving a case expires at the end of the court term, citing *Griffin v. State*, 565 So. 2d 545, 549 (Miss. 1990) (dispositive portion of the circuit court's order granting a new trial on two counts of indictment had same finality as judgment and with no further action being taken therein in ensuing regular term of court, circuit court was without authority thereafter to reinstate convictions). *Accord, Campbell v. State*, 430 So. 2d 851 (Miss. 1983).

¶30. The State agrees that the lower court retained jurisdiction over this case. It argues, however, that the court lost its power to entertain the motion and dispose of it after its term had ended. That argument finds support in the emphasis which this Court placed on the fact that the motion and action in *Thornhill* was taken during the term. This Court has required that motions for new trial be filed prior to the expiration of the term both before and after the adoption of the Uniform Criminal Rules of Circuit Court Practice. *Christian v. State*, 456 So. 2d 729, 734-735 (Miss. 1984); *Dobbs v. State*, 200 Miss. 595, 27 So. 2d 551 (1946); *Pittman v. State*, 147 Miss. 593, 113 So. 348 (1927); Rule 5.16, Uniform Criminal Rules of Circuit Court Practice ("A motion for new trial must be made before the adjournment of the term of court in which the defendant was convicted, except in those cases in which the court enters an order retaining jurisdiction to permit the filing or hearing of a motion in vacation or after adjournment of that term of court.")[1]

¶31. As explained by this Court, the reason that courts generally may not grant motions for new trials at subsequent terms, after a final judgment has been rendered, is "[t]here must be some point where the litigation in the lower court terminates and the right to appeal to the higher court begins." *Griffin* at 549, citing *Heflen v. State*, 206 Ind. 663, 668, 190 N.E. 847, 849-50 (1934). Here, no final judgment was rendered since the court declared a mistrial. Further, the court specifically retained jurisdiction over this cause by ordering that it be continued until its further order.[(2)] This order was somewhat superfluous in that with no final judgment having been entered the case remained within the jurisdiction of the court with or without an order. The order made no reference to any post-trial motion, however, nor is there any indication that such a motion was contemplated.

¶32. The question is whether there is or should be a temporal limit with respect to judgments notwithstanding the verdict, and if so, whether that limit should be the same as the limit for a motion for new trial. Our present rule prescribes ten days. *See* footnote 1. ante. Our civil rules prescribe ten days for both motions for judgment notwithstanding the verdict and motions for new trial. Rule 50 and 59 Miss. R. Civ. Pro.

¶33. While there is no express provision for judgment notwithstanding the verdict in criminal cases, it can hardly be surprising to criminal defendants that there should be a temporal limit to such motions to the extent that they are sanctioned by this Court. Indeed, *Thornhill* emphasized that the motion there was made within the term and *Russell* spoke of such motions on an equal footing with those in civil cases. The motion filed here is outside both the ten day limit and the term limit. It follows then that the motion cannot be treated as timely. We now address the double jeopardy claim in that context.

**c.**

¶34. McGraw argues that when the judge entered the order of dismissal against him on the merits, even if by mistake, such dismissal amounts to acquittal, and the defendant may not again be put to trial. McGraw cites several United States Supreme Court cases in support of his argument, and Mississippi cases which have adopted the cited United States Supreme Court opinions.

¶35. The double jeopardy clause represents a "balancing," *United States v. Scott,* 437 U.S. 82, 92 (1978), of the defendant's interest in finality, *Jeffers v. United States*, 432 U.S. 137, 150 (1977), *United States v. Jorn*, 400 U.S. 470, 486 (1971), against "the societal interest in [punishment.]" *United States v. Tateo*, 377 U.S. 463, 466 (1964). Certainly it is clear beyond question that the double jeopardy clause does not guarantee a defendant that the government will be prepared, in all circumstances, to vindicate the social interest in law enforcement through the vehicle of a single proceeding for a given offense. *United States v. Jorn*, 400 U.S. 470, 483-84 (1971) (plurality opinion).

¶36. In *Fong Foo v. United States*, 369 U.S. 141 (1962), the trial judge directed the jury to return a verdict of acquittal after the government introduced part but not all of its evidence. The Court of Appeals said the district court was without power to direct the judgment of acquittal at that particular time. Nevertheless, the United States Supreme Court upheld the acquittal, holding:

> The Court of Appeals thought, not without reason, that the acquittal was based upon an egregiously erroneous foundation. Nevertheless, "[t]he verdict of acquittal was final, and could

not be reviewed . . . without putting [the petitioners] twice in jeopardy, and thereby violating the constitution." *United States v. Ball*, 163 U.S. 662, 671.

*Fong Foo*, 369 U.S. at 143.

¶37. In *Sanabria v. United States*, 437 U.S. 54, 57 L.Ed. 43, 98 S.Ct. 2170 (1978), a federal judge erroneously granted a motion to dismiss a criminal case. Again, the Court of Appeals vacated the judgment of acquittal and remanded for a new trial, and again the United States Supreme Court overruled the Court of Appeals saying that an erroneous judgment of dismissal by a trial judge still operates to acquit the defendant.

> Once the defendant has been acquitted, no matter how "egregiously erroneous" the legal rulings leading to the judgment of acquittal might be, there is no exception to the constitutional rule forbidding successive trials for the same offense. *Fong Foo v. United States*, 369 U.S. 141. Thus here, while the numbers evidence was erroneously excluded, the judgment of acquittal produced thereby is final and unreviewable. (Citations omitted).

*Sanabria*, 437 U.S. at 55.

¶38. We must distinguish the United States Supreme Court cases cited by McGraw. *Fong Foo* and *Sanabria* did not involve a judgment of acquittal entered after the jury was discharged. Neither was a judgment of acquittal entered prior to empaneling a jury. The judgments of acquittal given finality despite error *acted to terminate a jury trial in progress*. The judgments of acquittal in *Fong Foo* and *Sanabria* were terminating events for jeopardy purposes.

¶39. Most pertinent to the present inquiry is *United States v. Martin Linen Supply Co*., 430 U.S. 564 (1977). There, after a deadlocked jury was discharged when unable to agree upon a verdict at the criminal contempt trial of respondent corporations, the district judge granted respondents' timely motions for judgments of acquittal under Fed. Rule Crim. Proc. 29(c), an express rule of federal criminal procedure authorizing such a judgment if a motion is made within seven days of the return of a guilty verdict or declaration of a mistrial. Fed. R. Crim. Proc. 29. The government appealed and Martin Linen successfully asserted the double jeopardy clause.

¶40. The United States Supreme Court refused to make a distinction, for double jeopardy purposes, between orders directing acquittal prior to jury deliberations and those acquitting based on timely motions under the rule. 430 U. S. at 573-74. It held that the double jeopardy clause barred reprosecution and the appeal. Significantly, however, the court distinguished the earlier case of *United States v. Sanford*, 429 U. S. 14 (1976) on the basis that in *Sanford*, the post-mistrial order came four months after the declaration and was not in response to a motion timely filed. The court noted that it "characterized the judge's dismissal as a 'pretrial order.'" 430 U.S. 575. Thus *Sanford* was deemed governed by *Serfass v. United States*, 420 U.S. 377 (1975).

¶41. This is a similar case. Given that the motion to reconsider the directed verdict was not filed within the term or within ten days of entry of the judgment we treat it as a pre-trial motion with reference to the second trial. As such, for double jeopardy purposes, it is not an acquittal on the merits that would prevent the subsequent prosecution.

## CONCLUSION

¶42. For the foregoing reasons the judgment of the circuit court is affirmed.

¶43. **AFFIRMED.**

**LEE, C.J., PRATHER, P.J., ROBERTS, SMITH AND MILLS, JJ., CONCUR. McRAE, J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY SULLIVAN, P.J. PITTMAN, J., NOT PARTICIPATING.**

**McRAE, JUSTICE, DISSENTING:**

¶44. I disagree with the majority's attempt to fashion a new rule restricting the time frame in which a circuit court judge may consider a motion for a directed verdict. Further, retroactive application of such a rule to McGraw's case is impermissible. Accordingly, I dissent.

¶45. McGraw was tried by a jury of the Circuit Court of Washington County on August 5 and 6, 1993. His motion for a directed verdict was denied. After the jury was unable to reach a verdict, the circuit court declared a mistrial. On September 15, 1993, McGraw filed a Motion to Reconsider Motion for Directed Verdict. The circuit court sustained the motion and signed an Order of Dismissal on November 1, 1993. After the State filed its Motion to Reconsider the next day, the circuit court entered another order setting aside the November 1 dismissal. McGraw's case was set for retrial on November 22, 1993, and on November 17, the circuit court denied his motion for j.n.o.v. He was retried on November 23, 1993 and found guilty of aggravated assault.

¶46. At the time of McGraw's trials in 1993, criminal proceedings were governed by the Uniform Criminal Rules of Circuit Court Practice. Only Rule 5.16 addresses time limits for the filing of post-trial motions, and its scope is limited to the motion for new trial, requiring that such motion be made "before adjournment of the term of court in which the defendant was convicted except in those cases in which the court enters an order retaining jurisdiction to permit the filing or hearing of a motion in vacation or after adjournment of that term of court." Neither Rule 5.16 nor any other rule under the old U.C.R.C.C.P. speaks to motions to reconsider. Moreover, the only time limit, even for a motion for a new trial, is within the term in which the defendant was *convicted*. McGraw was not convicted. A mistrial was declared, so the circuit court had retained jurisdiction over all matters pertaining to the case. Therefore, under the only possibly applicable rule of criminal practice, no time limit could be imposed upon McGraw's motion to reconsider.

¶47. The circuit court still had authority to consider McGraw's motion for reconsideration of the directed verdict, for when faced with making a ruling on a motion for directed verdict, the court must review the evidence and the ruling on its sufficiency as of the time the last challenge was made. *Johnson v. State*, 642 So. 2d 924, 926 (Miss. 1994). McGraw challenged the sufficiency of the evidence when the mistrial was declared, with his motion for reconsideration of the directed verdict. Therefore, all evidence presented at trial, even though the jury did not reach a verdict, should have

been considered. *Ballenger v. State*, 667 So. 2d 1242, 1252 (Miss. 1995); *Green v. State*, 631 So. 2d 167, 174 (Miss. 1994).

¶48. When the Order of Dismissal was signed on November 1, 1993, McGraw was discharged and the circuit court lost jurisdiction over the case. For all intents and purposes, that order acquitted McGraw and double jeopardy attached. The majority stretches too far in its attempts to distinguish *Fung Foo v. United States*, 369 U.S. 141 (1962) and *Sanabria v. United States,* 437 U.S. 54 (1978). There is no basis for the majority's argument that acquittal, the terminating event for purposes of jeopardy, occurring *after* the jury was dismissed is any less critical than an acquittal which occurs while court is still in session.

¶49. Finally, the majority decides to treat McGraw's motion to reconsider as a pre-trial motion because it was not filed within *the term* or ten days after the entry of judgment. First, we no longer recognize "terms" of court. Even assuming *arguendo* that reference to terms of court was proper, the only rule vaguely applicable at the time of McGraw's trial was Rule 5.16, which referenced the term in which the defendant was *convicted*, and provided an exception for those instances where the circuit court otherwise retained jurisdiction as the court properly did in this case. Moreover, employing the requirement that the motion be filed "within ten days after entry of judgment" attempts to retroactively apply to a 1993 trial the dictates of Rule 10.05 of the Uniform Rules of Circuit and County Court Practice, which was not adopted until May 1, 1995.

¶50. The majority bases its new rule for time limits for post-trial motions in criminal cases upon a tenuous foundation. It erroneously makes a retroactive application of its new rule to McGraw. Double jeopardy attached when McGraw was discharged on November 1, 1993, and he should not have been tried again for the same crime. Accordingly, I dissent.

**SULLIVAN, P.J., JOINS THIS OPINION.**

1. The Uniform Criminal Rules of Circuit Court Practice have been superseded by the Uniform Rules of Circuit and County Court Practice, which went into effect on May 1, 1995. *Mississippi Rules of Court, State and Federal, 1996.* Rule 10.05 of the new rules replaces Rule 5.16 and provides in pertinent part that "[a] motion for new trial must be made within ten days of the entry of judgment. The trial judge may hear and determine a motion for new trial at any time and in any county or judicial district within the trial judge's jurisdiction."

2. "IT IS, THEREFORE, ORDERED AND ADJUDGED that a mistrial be and the same hereby is entered in the above styled cause and *this matter is continued until further Order of the Court.*" C.P. 32.