FONG FOO ET AL. *v.* UNITED STATES.

No. 64. Argued January 16, 1962.—Decided March 19, 1962.*

*Arthur Richenthal* argued the causes for petitioners and filed briefs for petitioner in No. 65. *David E. Feller* filed briefs for petitioners in No. 64.

*Solicitor General Cox* argued the causes for the United States. With him on the briefs were *Assistant Attorney General Miller, Stephen J. Pollak, Beatrice Rosenberg, Philip R. Monahan* and *J. F. Bishop.*

PER CURIAM.

The petitioners, a corporation and two of its employees, were brought to trial before a jury in a federal district court upon an indictment charging a conspiracy and the substantive offense of concealing material facts in a matter within the jurisdiction of an agency of the United States, in violation of 18 U. S. C. §§ 371 and 1001. After seven

---

*Together with No. 65, *Standard Coil Products Co., Inc.,* v. *United States,* also on certiorari to the same Court.

days of what promised to be a long and complicated trial, three government witnesses had appeared and a fourth was in the process of testifying. At that point the district judge directed the jury to return verdicts of acquittal as to all the defendants, and a formal judgment of acquittal was subsequently entered.

The record shows that the district judge's action was based upon one or both of two grounds: supposed improper conduct on the part of the Assistant United States Attorney who was prosecuting the case, and a supposed lack of credibility in the testimony of the witnesses for the prosecution who had testified up to that point.

The Government filed a petition for a writ of mandamus in the Court of Appeals for the First Circuit, praying that the judgment of acquittal be vacated and the case reassigned for trial. The court granted the petition, upon the ground that under the circumstances revealed by the record the trial court was without power to direct the judgment in question. Judge Aldrich concurred separately, finding that the directed judgment of acquittal had been based solely on the supposed improper conduct of the prosecutor, and agreeing with his colleagues that the district judge was without power to direct an acquittal on that ground. 286 F. 2d 556. We granted certiorari to consider a question of importance in the administration of justice in the federal courts. 366 U. S. 959.

In holding that the District Court was without power to direct acquittals under the circumstances disclosed by the record, the Court of Appeals relied primarily upon two decisions of this Court, *Ex parte United States,* 242 U. S. 27, and *Ex parte United States,* 287 U. S. 241. In the first of these cases it was held that a district judge had no power to suspend a mandatory prison sentence, and that a writ of mandamus would lie to require the judge to vacate his erroneous order of suspension. In the second case the Court issued a writ of mandamus ordering a dis-

trict judge to issue a bench warrant which he had refused to do, in the purported exercise of his discretion, for a person under an indictment returned by a properly constituted grand jury.

Neither of those decisions involved the guaranty of the Fifth Amendment that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." That constitutional provision is at the very root of the present case, and we cannot but conclude that the guaranty was violated when the Court of Appeals set aside the judgment of acquittal and directed that the petitioners be tried again for the same offense.

The petitioners were tried under a valid indictment in a federal court which had jurisdiction over them and over the subject matter. The trial did not terminate prior to the entry of judgment, as in *Gori* v. *United States,* 367 U. S. 364. It terminated with the entry of a final judgment of acquittal as to each petitioner. The Court of Appeals thought, not without reason, that the acquittal was based upon an egregiously erroneous foundation. Nevertheless, "[t]he verdict of acquittal was final, and could not be reviewed . . . without putting [the petitioners] twice in jeopardy, and thereby violating the Constitution." *United States* v. *Ball,* 163 U. S. 662, 671.

*Reversed.*

Mr. Justice Whittaker took no part in the consideration or decision of these cases.

Mr. Justice Harlan, concurring.

Were I able to find, as Judge Aldrich did, that the District Court's judgment of acquittal was based solely on the Assistant United States Attorney's *alleged* misconduct, I would think that a retrial of the petitioners would not be prevented by the Double Jeopardy Clause of the

Fifth Amendment. Even assuming that a trial court may have power, in extreme circumstances, to direct a judgment of acquittal, instead of declaring a mistrial, because of a prosecutor's misconduct—a proposition which I seriously doubt—I do not think that such power existed in the circumstances of this case. But since an examination of the record leaves me unable, as it did the majority of the Court of Appeals, to attribute the action of the District Court to this factor alone, I concur in the judgment of reversal.

Mr. Justice Clark, dissenting.

The Court speaks with such expanse that I am obliged to dissent. It says that because "a final judgment of acquittal" was entered pursuant to a directed verdict the propriety of such "acquittal" cannot be reviewed even though the Government had not concluded its main case at the time the verdict was directed. The District Court under the circumstances here clearly had no power to direct a verdict of acquittal or to enter a judgment thereon. In my view when a trial court has no power to direct such a verdict, the judgment based thereon is a nullity. The word "acquittal" in this context is no magic open sesame freeing in this case two persons and absolving a corporation from serious grand jury charges of fraud upon the Government.

On the record before us it matters not whether the so-called acquittal was pursuant to the trial court's conclusion that the Government's witnesses up to that point lacked credibility or was based on the alleged misconduct of the prosecution.

On the first point, the Government had only examined three of its witnesses and was in the process of examining a fourth when the acquittal was entered. The first and third witnesses were merely preliminary, offered to iden-

tify documents and explain the functions performed by the individual defendants for the corporate defendant. The second was offered to give the jury an explanation of radiosondes, devices for gathering weather data, which petitioners were furnishing the Government under contracts totaling several million dollars. It was during the latter's testimony—entirely explanatory—that the court called a recess for the stated purpose of requiring the United States Attorney to "consider whether the public interest is served by a further prosecution of this case." Upon the vigorous insistence of the United States Attorney himself, the trial was resumed and the Government called its third and fourth witnesses. The fourth witness was the first to testify as to the fraud upon the Government which related to a deliberate scheme to conceal from government inspectors defects in the devices. During direct examination the fourth witness was "not sure" as to the date of a certain conference at which representatives of the corporate defendant were present. Thereafter at a recess period his memory was refreshed during a conversation with one of the Assistant United States Attorneys. Upon resuming the stand he corrected his previous testimony as to the date, placing it a few months earlier. On cross-examination he admitted that the error had been called to his attention by the Assistant. The court then excused the jury and after excoriating the Assistant called the jury back into session and directed the verdict of acquittal.

It is fundamental in our criminal jurisprudence that the public has a right to have a person who stands legally indicted by a grand jury publicly tried on the charge. No judge has the power before hearing the testimony proffered by the Government or at least canvassing the same to enter a judgment of acquittal and thus frustrate the Government in the performance of its duty to prosecute those who violate its law.

Here, as the United States Attorney advised the court, only three witnesses of the "many . . . to be heard from . . ." had testified. The court had only begun to hear what promised to be a protracted conspiracy case involving many witnesses. The Government had not rested. As the majority of the Court of Appeals observed, the District Court:

> "abruptly terminated the Government's case . . . long before the Government had had an opportunity to show whether or not it had a case; and, moreover, he did so in ignorance of either the exact nature or the cogency of the specific .evidence of guilt which Government's counsel said he had available and was ready to present." 286 F. 2d, at 562–563.

At such a stage of the case the District Court had no power to prejudge the Government's proof—find it insufficient or unconvincing—and set the petitioners free.

On the second point, even if there were misconduct, the court still had no power to punish the Government because of the indiscretion of its lawyer. As this Court said in *McGuire v. United States,* 273 U. S. 95, 99 (1927), "A criminal prosecution is more than a game in which the Government may be checkmated and the game lost merely because its officers have not played according to rule." At most, if there had been misconduct, the remedy would have been to declare a mistrial and impose appropriate punishment upon the Assistant United States Attorney, rather than upon the public. In my view the judgment of the Court of Appeals should, therefore, be affirmed.