**STATE of Minnesota, Appellant,**

v.

**Jeffrey Alan GURSKE, Respondent.**

**No. CX–86–777.**

Supreme Court of Minnesota.

Nov. 7, 1986.

---

Hubert H. Humphrey, III, Atty. Gen., Tom Foley, Ramsey Co. Atty., Steven C. DeCoster, Asst. Co. Atty., St. Paul, for appellant.

Adam E. Bridge, Cambridge, for respondent.

KELLEY, Justice.

Carla Gurske died as a result of wounds she received at the hands of her husband, respondent Jeffrey Gurske, and the mobile home in which she lived was set fire by him. By indictment of the Ramsey County Grand Jury, Jeffrey Gurske subsequently was charged with the crime of murder in the first degree, Minn.Stat. § 609.185(3) (1984) (intentional felony murder), and murder in the second degree. Minn.Stat. § 609.19(1) (1984) (intentional homicide). Following trial, the jury stalemated and a mistrial declared and the matter was set on for a prompt retrial. Seven days after the mistrial had been declared, the trial judge, based upon the evidence adduced at the first trial concluded that "Viewing the evidence in the light most favorable to the state * * * the court is compelled to conclude that reasonable persons could not agree beyond a reasonable doubt that there exist a motivational link between the death [of the victim] and the arson [the alleged underlying felony]" and granted what was denominated by respondent's attorney and by the court itself as a motion to dismiss the felony murder charge.[1] The State appealed the dismissal order.[2] The question presented by this appeal is whether the Double Jeopardy Clause of the United States Constitution (amend. V) bars the prosecution from appealing from the trial court's ruling. We hold that it does and remand for retrial of other pending charges.

Before commencement of his first trial, Gurske moved for an order dismissing the felony murder charge contending that Minn.Stat. § 609.185(3), the felony murder statute, was inapplicable to the factual situation present in this case. Substantially the same motion (but labeled a motion for a directed verdict) was renewed when the state rested, and once again when the defense rested. After the jury became deadlocked, the court dismissed the jury and declared a mistrial and immediately scheduled a retrial. Before commencement of the retrial, Gurske renewed his dismissal motion, which the trial court granted. In granting the dismissal motion, the trial court clearly ruled that the evidence, all of which he had heard or seen at the first trial, was legally insufficient to sustain a guilty verdict on the intentional felony murder charge.

The question then is whether the trial court's order constitutes an acquittal for the purposes of the Double Jeopardy Clause. Respondent Gurske contends that notwithstanding the fact that his motion was labeled as one seeking dismissal and that the court's order was one dismissing the felony murder count, both the motion and the order should properly be viewed as a motion for judgment of acquittal pursuant to Minn.R.Crim.P. 26.03, subd. 17(3), the relevant part of which reads:

(3) Motion After Discharge of Jury. If the jury returns a verdict of guilty or is discharged without having returned a verdict, a motion for judgment of acquit-

1. The second-degree murder charge and perhaps other charges remain for trial.

2. The State originally appealed to the court of appeals. Because the appeal necessarily involved the interpretation of Minn.Stat. § 609.-185(3) (1984), the felony murder in the first-degree statute, convictions of which are appealed directly to this court, the matter was transferred here pursuant to Rule 118, Rules of Civil Appellate Procedure.

tal may be made or renewed within 15 days after the jury is discharged or within such further time as the court may fix during the 15–day period. If a verdict of guilty is returned the court may on such motion set aside the verdict and enter judgment of acquittal. If no verdict is returned, the court may enter judgment of acquittal. Such a motion is not barred by defendant's failure to make a similar motion prior to the submission of the case to the jury.

Because Gurske timely made his last motion in compliance with Rule 26.03, subd. 17(3), he contends that, although not denominated as such, the motion was in essence a motion for a judgment of acquittal. Finally, he asserts that in deciding the Double Jeopardy Clause issue, this court should look at the substance of the trial court's ruling rather than either its form or the form of the motion precipitating the order.

The State, to the contrary, responds that the court's order did not amount to a judgment of acquittal. Rather it was, according to the State's view, only the pretrial dismissal of one count of a grand jury indictment. Therefore, the State claims it can appeal as a matter of right pursuant to Minn.R.Crim.P. 28.04, subd. 1.[3] In other words, the State would have us look at the form of the order and ignore the reality of its consequences. Additionally, the State argues that the dismissal was based on an erroneous interpretation of the first-degree felony murder statute, and, therefore, was not intended by the trial court to be an adjudication of acquittal.

Because the issue involved concerns the scope and purpose of the federal constitution's Double Jeopardy Clause, we turn to an examination of rules to be gleaned from relevant federal cases. From that examination, certain principles emerge. First, an order or judgment that evidence is legally insufficient to sustain a verdict of guilt amounts to an acquittal for purposes of the Double Jeopardy Clause. *See, e.g., United States v. Martin Linen Supply Co.*, 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed.2d 642, (1977) (based upon Fed.R.Crim.P. 29(c) which is substantially identical with Minn. R.Crim.P. 26.03, subd. 17). Appeals from judgments of acquittal are barred by the Double Jeopardy Clause if the appeal will result in a remand to the trial court leading to proceedings for additional fact finding. *Id.* at 575–76, 97 S.Ct. at 1356–57.[4] Second, if a trial court enters a judgment or order constituting an acquittal, the Double Jeopardy Clause bars an appeal by the prosecution not only when there is potential for a second trial, but also if reversal would result in further proceedings for resolution of factual issues going to the elements of the charged crime. *See, e.g. United States v. Martin Linen Supply Co., supra; Smalis v. Pennsylvania*, — U.S. —, 106 S.Ct. 1745, 88 L.Ed.2d 285 (1986) (dicta). The United States Supreme Court has repeatedly followed those two principles by holding that when the relief sought by a defendant and granted by the court amounts to an acquittal under the Double Jeopardy Clause, there can be no appeal by the prosecution. *United States v. Martin Linen, supra,* (motion for acquittal); *United States v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975) (motion for acquittal after a verdict of guilty); *Smalis v. Pennsylvania, supra,* (demurrer).

Moreover, the Supreme Court of the United States has clearly indicated the court in resolving a Double Jeopardy Clause claim should look to the substance of the trial court's ruling rather than to its form, or to the form of the motion precipitating the order. It addressed the issue in *United States v. Martin Linen* thus:

Perhaps the most fundamental rule in the history of double jeopardy jurispru-

---

**3.** While the rule does permit the prosecution of appeals from certain pretrial orders, we note this type of order may not be appealable even under that rule. *See, e.g.,* Minn.Stat. § 631.21 (1984).

**4.** *Accord Burks v. United States,* 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978); *Sanabria v. United States,* 437 U.S. 54, 98 S.Ct. 2170, 57 L.Ed.2d 43 (1978); *United States v. Scott,* 437 U.S. 82, 91, 98 S.Ct. 2187, 2193, 57 L.Ed.2d 65 (1978).

dence has been that "[a] verdict of acquittal * * * could not be reviewed, on error or otherwise, without putting [a defendant] twice in jeopardy, and thereby violating the Constitution." *United States v. Ball*, 163 U.S. 662, 671 [16 S.Ct. 1192, 1195, 41 L.Ed. 300] (1896). In *Fong Foo v. United States* [369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 627 (1962) ], for example, a District Court directed jury verdicts of acquittal and subsequently entered formal judgments of acquittal. The Court of Appeals entertained the appeal of the United States and reversed the District Court's ruling on the ground that the trial judge was without power to direct acquittals under the circumstances disclosed by the record. We reversed, holding that, although the Court of Appeals may correctly have believed "that the acquittal was based upon an egregiously erroneous foundation, * * * [n]evertheless, '[t]he verdict of acquittal was final, and could not be reviewed * * without putting [the defendants] twice in jeopardy, and thereby violating the Constitution.'" 369 U.S., at 143 [82 S.Ct. at 672]. *See also Kepner v. United States*, [195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904) ]; *United States v. Sisson*, [399 U.S. 267, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970) ] at 289–290; *Serfass v. United States*, [420 U.S. 377 (1975) ] at 392 [95 S.Ct. 1055, 1064, 43 L.Ed.2d 265]. In applying this teaching of *Ball, Fong Foo*, and like cases, we have emphasized that what constitutes an "acquittal" is not to be controlled by the form of the judge's action. *United States v. Sisson, supra*, at 270 [99 S.Ct. at 2119]; cf. *United States v. Wilson*, 420 U.S., at 336 [95 S.Ct. at 1018]. Rather, we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged.

430 U.S. at 571, 97 S.Ct. at 1354. (original footnote omitted) (excepting bracketed citations, bracketed material in the original.)

The Supreme Court has further stated "[t]he Court must inquire whether 'the ruling in [defendant's] [sic] favor was actually an "acquittal" even though the District Court characterized it otherwise.'" 430 U.S. at 571 n. 9, 97 S.Ct. at 1354 n. 9 *quoting United States v. Wilson*, 420 U.S. 332, 336, 95 S.Ct. 1013, 1018, 43 L.Ed.2d 232 (1975). The appellate court must ascertain whether the trial court's ruling goes to the merits of the case. *See Sanabria v. United States*, 437 U.S. 54, 64, 98 S.Ct. 2170, 2178, 57 L.Ed.2d 43 (1978).

Applying the foregoing principles and rules to the facts of the instant case leaves us with no doubt that the trial judge's order goes to the very merits of this case. During the first trial proceedings, the motion requesting the appropriate relief was repeatedly asserted. Only after the trial court heard all the evidence was it convinced of the validity of respondent's position. Based upon the evidence presented, the trial court concluded a jury could not find Gurske's guilt of first-degree intentional felony murder proven beyond a reasonable doubt. That holding had all the consequences of a formally denominated judgment of acquittal.[5] Reversal of the trial court's order might entail a second trial and with certainty involve proceedings to resolve factual issues as to elements of the crime. The correctness of the trial court's determination, therefore, cannot be the proper subject of a prosecutorial appeal. *Smalis v. Pennsylvania*, —— U.S. ——, 106 S.Ct. 1745, 1749, 90 L.Ed.2d 116 (1986).

---

**5.** During the trial, respondent's motion was labeled a "motion to dismiss" and the subsequent motions were called motions for directed verdicts. Minn.R.Crim.P. 26.03, subd. 17(1) abolishes motions for directed verdicts. This rule provides that motions for judgment of acquittal shall be used in lieu of motions for directed verdicts. Although the rules and the committee comments thereto do not specifically mention motions to dismiss, it appears clear that in either case when relief is sought of the nature here involved, despite the denomination, the motion granted was, in effect, one for acquittal, and the order was, in effect, an order for judgment of acquittal.

The appeal is dismissed. The case is remanded to the trial court for further proceedings.

The respondent is allowed attorney fees in the amount of $600.