Terry JORGENSON, Petitioner–
Appellant,

v.

John CASON, Warden, Respondent–
Appellee.

No. 02–2155.

United States Court of Appeals,
Sixth Circuit.

Feb. 19, 2004.

Lisa L. Dwyer Pleasant Ridge, MI, for Petitioner–Appellant.

Debra M. Gagliardi, Asst. Atty. General, Office of the Attorney General, Lansing, MI, for Respondent–Appellee.

Before KENNEDY and GIBBONS, Circuit Judges; and ALDRICH, District Judge.*

ALDRICH, Circuit Judge.

Petitioner Terry Jorgenson ("Jorgenson") seeks a writ of habeas corpus, arguing that his conviction for criminal sexual conduct in a Michigan court violated the protection against double jeopardy provided to him by the Fifth and Fourteenth Amendments to the United States Constitution. The United States District Court

---

* The Honorable Ann Aldrich, United States District Judge for the Northern District of Ohio, sitting by designation.

for the Eastern District of Michigan upheld Jorgenson's conviction and denied habeas relief. For the following reasons, we AFFIRM the district court's decision.

## I. Background

Jorgenson was accused of sexually assaulting his 13–year–old stepson, Benjamin Horne, between October 1998 and December 1998. Jorgenson was tried in December 1999 for eight counts of "criminal sexual conduct—first degree." in violation of Michigan Compiled Laws § 750.520b. After the jury in this proceeding was sworn and impaneled, the parties gave their opening statements.

Defense counsel's opening statement referred to the fact that Horne's biological father had been incarcerated for the crime of rape. Defense counsel stated, in pertinent part:

> But when [Terry] married Karleen Jorgenson. he also married three stepchildren. What he married into is some stepkids who didn't have a father. You're probably going to hear that their father was convicted of rape and sent to prison for rape, their biological father. So Terry's the stepdad. and his job now is to raise these children, children who have never known what it is to have a father, whose own biological father at that time was serving time for rape in prison.

J.A. at 242.

After defense counsel's opening statement, the prosecution moved for a mistrial, arguing that the references to the victim's father's incarceration for rape were irrelevant and highly prejudicial. The trial court agreed, finding that the statement by defense counsel had "no probative value" and "was an unnecessary comment that ... creates a thought process that these kids are around sex all the time and they had a father that did it and ... got put it prison for it." She rejected defense

counsel's suggestion that any prejudice to the jury caused by the remark could be alleviated by means of a curative instruction, observing that "you can't unring a bell."

When Jorgenson was again brought to trial for eight violations of MCL § 750.520b. his counsel moved to dismiss the charges, arguing that re-trial would violate Jorgenson's constitutional protection from double jeopardy. The trial court held a hearing on the matter, then denied the motion to dismiss. Jorgenson then filed an emergency application for leave to appeal with the Michigan Court of Appeals, but this application was denied.

The second trial commenced on December 14, 1999. On December 15, 1999. Jorgenson pled guilty to three counts of "criminal sexual conduct—first degree." Jorgenson was sentenced to concurrent terms of twenty to forty years' imprisonment. (He is now a prisoner at the Mound Correctional Facility in Detroit, Michigan.)

After sentencing. Jorgenson filed an application for leave to appeal with the Michigan Court of Appeals, asserting that the trial court abused its discretion in denying his motion to dismiss on double jeopardy grounds. The Michigan Court of Appeals denied this application, as did the Michigan Supreme Court.

On October 26, 2001, Jorgenson filed his petition for habeas relief with the United States District Court for the Eastern District of Michigan. That court denied relief without a hearing in an order on August 27, 2002, finding that "the trial court rendered a reasonable decision to grant the mistrial after full consideration of the relevant facts and circumstances." Jorgenson filed a notice of appeal on September 20, 2002, and on September 26, 2002, the district court issued a certificate of appealability.

In his appeal, Jorgensen raises a single issue: whether the statement of defense

counsel created "manifest necessity" for a mistrial. If it did not, then the second criminal proceeding, following the grant of a mistrial over Jorgensen's objection, violated his constitutional protection against double jeopardy.

## II. Discussion

We review the district court's legal conclusions regarding a habeas petition *de novo* and the district court's factual findings for clear error. *Vincent v. Jones,* 292 F.3d 506, 510 (6th Cir.2002); *Simpson v. Jones,* 238 F.3d 399, 405 (6th Cir.2000). The provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). 28 U.S.C. § 2241 *et seq.,* also govern this case. AEDPA dictates that:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(2003).

Jorgenson does not claim that the proceedings in Michigan state courts resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. Instead, he claims that the proceedings "resulted in a decision that was contrary to clearly established Federal law ... Specifically, the trial court arrived at a conclusion opposite to that reached by the United States Supreme Court on a question of law." This Court will therefore turn its attention to the relevant language in section § 2254(d)(1).

Justice O'Connor, writing for the Supreme Court in *Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). explained the "contrary to" language of this section as follows:

A state-court decision will certainly be contrary to our clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases ... A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from our precedent.

*Id.* at 405–406.

There appears to be some doubt about the proper interpretation of "clearly established Federal law, as determined by the Supreme Court"—specifically, courts have disagreed over the role to be allotted to federal appellate and state court rulings under AEDPA. *See Herbert v. Billy,* 160 F.3d 1131, 1135 (6th Cir.1998)("[A] district court or court of appeals no longer can look to lower federal court decisions in deciding whether the state decision is contrary to ... federal law"); *Harris v. Stovall,* 212 F.3d 940, 944 (6th Cir.2000)(reemphasizing same point). *But see Doan v. Brigano,* 237 F.3d 722, 734 (6th Cir.2001)(finding circuit precedent "worth noting"); *Duhaime v. Ducharme,* 200 F.3d 597, 600–01 (9th Cir.1999)(circuit cases "may be persuasive authority for purposes of determining whether a particular state court decision is an 'unreasonable application' of Supreme Court law, and also may help ... determine what law is 'clearly established.'").

However, such disputes need not impact the disposition of this case. A series of

Supreme Court opinions has carefully outlined the standards to be applied in considering the propriety of a trial judge's grant of a mistrial, and the most influential Supreme Court ruling on the issue sprang from a set of facts bearing remarkable similarity to those now before this Court. Given this similarity, this Court cannot conclude that the state court confronted "a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrive[d] at a result different from" Supreme Court precedent.

It has long been settled that the Constitution's prohibition against twice subjecting a defendant to jeopardy for the same offense applies to state court proceedings, *Benton v. Maryland,* 395 U.S. 784, 794, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), and that this prohibition absolutely bars a state from conducting a second trial following any acquittal. *Fong Foo v. United States,* 369 U.S. 141, 143, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962). Jeopardy also attaches before a judgment becomes final, *United States v. Jorn,* 400 U.S. 470, 479, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971); *Illinois v. Somerville,* 410 U.S. 458, 471, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973), though in cases where a trial is aborted short of its final stages, "a defendant's valued right to have his trial completed by a particular tribunal must in some instances be subordinated to the public's interest in fair trials designed to end in just judgments." *Wade v. Hunter,* 336 U.S. 684, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949).

In *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1977). the Supreme Court addressed the issue of double jeopardy as it applies to proceedings terminated before completion by a grant of mistrial over defendant's objection. Justice Stevens, delivering the opinion of the Court, wrote:

Because of the variety of circumstances that may make it necessary to discharge a jury before a trial is concluded, and because those circumstances do not invariably create unfairness to the accused, his valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury. Yet in view of the importance of the right, and the fact that it is frustrated by any mistrial, the prosecutor must shoulder the burden of justifying the mistrial if he is to avoid the double jeopardy bar. His burden is a heavy one. The prosecutor must demonstrate "manifest necessity" for any mistrial declared over the objection of the defendant. . . .

The words "manifest necessity" appropriately characterize the magnitude of the prosecutor's burden. . . . Nevertheless, those words do not describe a standard that can be applied mechanically or without attention to the particular problem confronting the trial judge.

*Id.* at 505–06.

The "particular problem" confronting the trial judge in *Washington* was almost identical to the issue before Judge Chrzanowski in this matter. As Justice Stevens summarized: "the trial judge ordered a mistrial because the defendant's lawyer made improper and prejudicial remarks during his opening statement to the jury." *Id.* at 510. Where Washington's attorney improperly referred to prosecutorial misconduct in a prior proceeding, Jorgenson's counsel risked fostering bias within the jury by improperly casting suspicion upon the victim's father.

As in *Washington,* the trial judge here declined to issue a curative instruction, believing such a remedy to be insufficient to address potential bias. As in *Washington,* the trial judge here did not specifically hold that "manifest necessity" justified her

order of a mistrial—though she did offer to "us[e] the legal terminology ... if you need those legal words to say that right now."

To quote Justice Stevens:

We recognize that the extent of the possible bias cannot be measured, and that ... some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions. In a strict, literal sense, the mistrial was not "necessary." Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment....

An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal. Indeed, such statements create a risk, often not present in the individual juror bias situation, that the entire panel may be tainted. The trial judge, of course, may instruct the jury to disregard the improper comment. In extreme cases, he may discipline counsel, or even remove him from the trial ... Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument. Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare. a mistrial in appropriate cases. The interest in orderly, impartial procedure would be impaired if he were deterred from exercising that power by a concern that any time a reviewing court disagreed with his assessment of the trial situation a retrial would automatically be barred. The adoption of a stringent standard of appellate review in this area, therefore, would seriously impede the trial judge in the proper

performance of his duty, in order to protect the integrity of the trial, to take prompt and affirmative action to stop ... professional misconduct.

434 U.S. at 511–13 (citations omitted).

In this case, the trial judge heard argument from both sides regarding the (im)propriety of defense counsel's opening statement and the need for a mistrial. Similar conduct proved useful in persuading the *Washington* Court that the judge acted out of manifest necessity:

Defense counsel aired improper and highly prejudicial evidence before the jury, the possible impact of which the trial judge was in the best position to assess. The trial judge did not act precipitately in response to the prosecutor's request for a mistrial. On the contrary, evincing a concern for the possible double jeopardy consequences of an erroneous ruling, he gave both defense counsel and the prosecutor full opportunity to explain their positions on the propriety of a mistrial. We are therefore persuaded by the record that the trial judge acted responsibly and deliberately, and accorded careful consideration to respondent's interest in having the trial concluded in a single proceeding. Since he exercised "sound discretion" in handling the sensitive problem of possible juror bias created by the improper comment of defense counsel, the mistrial order is supported by the "high degree" of necessity which is required in a case of this kind. Neither party has a right to have his case decided by a jury which may be tainted by bias; in these circumstances, the public's interest in fair trials designed to end in just judgments must prevail over the defendant's valued right to have his trial concluded before the first jury impaneled.

434 U.S. at 514–16 (citations omitted).

The holding of *Washington* is precisely on point for this matter, and it has not

been reversed, limited, or otherwise controverted. The facts of the case are almost identical to those before the Court. As such, we find that the trial court confronted "a set of facts ... materially indistinguishable from a decision of [the Supreme] Court" and arrived at an analogous result. The scenario is therefore precisely opposite to that required for Jorgenson to prevail, and habeas relief was properly denied. *Williams v. Taylor*, 529 U.S. at 407.

### III. Conclusion

For the foregoing reasons, the decision of the district court upholding Jorgenson's conviction and denying habeas relief is **affirmed.**