IN THE COURT OF CRIMINAL APPEALS


OF TEXAS








No. PD-0039-09






THE STATE OF TEXAS



v.



HARVILL BLACKSHERE, Appellee







On Discretionary Review of

Case No. 11-07-00030-CR of 

the Eleventh Court of Appeals,

Brown County



 


 Womack, J., delivered the opinion of the unanimous Court.



 This case involves a State's appeal from a trial court's orders suppressing evidence and
terminating a prosecution.

In the District Court

 The appellee was indicted in Brown County for possession of methamphetamine. More
than two years passed. Four days before trial, a detective from the Brownwood Police Department discovered that the methamphetamine that the appellee was accused of possessing was
missing from the Department's evidence vault.

 The appellee then filed a Motion to Suppress, arguing that evidence related to the
methamphetamine should be suppressed because the State violated certain constitutional and
statutory provisions by misplacing the methamphetamine. The trial court decided to "carry" the
Motion to Suppress, so that it could rule after hearing the evidence presented at the trial.

 Trial before a jury began on February 6, 2007. After the testimony of the first six
witnesses, (1) the State said that it had presented all its evidence that was relevant to the appellee's
Motion to Suppress. The court made an oral ruling that it was suppressing the evidence and
dismissing the jury, but that it was not dismissing the case or directing a verdict of acquittal. The
discussion after the ruling shows that there was some confusion about the ruling and the State's
ability to appeal:

 THE COURT:  I find that on balance that I cannot  admit the evidence.  I
find that the defense has minimally shown that the State - and the State being the
Police Department and its procedures that were woefully inadequate, obviously,
and the custodian himself who is currently incarcerated, that justice can't be done
in this matter because of the State's actions attributed in that regard based on a
showing that the Defense has established under a totality of the evidence. So I
suppress the evidence. I dismiss the case against this Defendant. I'm going to
discharge the jury and the State will be able to appeal this ruling of the Court if it
desires.


 

 

 [DEFENSE COUNSEL]: Your Honor, just for clarification, I believe the Court
used the word "dismissed" in this. Is it my understanding that the Court is entering
a directed verdict of acquittal in this case?


 THE COURT: Well, at this point, I want to be clear about that. Based on what
I've heard from the evidence, the State had no other evidence other than what I've
heard.


 [PROSECUTOR]: That is correct. However, we would object to the Court using
the word "directed verdict" because that has grave consequences for our ability -


 THE COURT: I will agree. I will not use that, because I did state that - what I
have done is, I have essentially dismissed the jury. I have granted your Motion to
Suppress. I have excluded the evidence. And then they can take up this motion, if
they want, on the Court's ruling. But there will be no further trial on this matter. If
they desire to take it up, then, it will be another jury at another time. If they don't
then, effectively, because of this, then, I think I will leave it to the State or the
Defense can subsequently file a motion if you want.


 

 

 But  the jury is discharged. The case itself - I did say dismissed, but I really
meant dismiss the jury. So it's not a directed verdict of acquittal.


 [DEFENSE COUNSEL]: We would move for a directed verdict of acquittal.


 THE COURT: All right. At this point, I will deny that given - I think the rulings
are clear otherwise. I don't want to prevent the State from being able to take this
matter up if they desire to do so.


 


 [PROSECUTOR]: That was my only concern. I don't know if we're going to or
not. I just want to make sure we have the ability to if -


 THE COURT: I want you to have that. I want you to have that. But I also want
you to look at it real closely. And I know you will. Because I don't want this to be
hanging over this defendant. Get it done.


 [DEFENSE COUNSEL]: Right, Your Honor. That was our request. Because I
believe that even on an acquittal, they can appeal the issue. They are just barred
from further prosecution of the case. That is the reason for our request for a
directed verdict of acquittal in this matter.


 THE COURT: I will say this: If all the evidence is as it is right now, then I would
grant it. Unless [the prosecutor] has something further - I mean, I did not specifically state that I would grant that.


 [PROSECUTOR]: That is the rest of it. I would just ask that it be left as-is. If
counsel would like to file a motion with the Court later, he may do so.


 THE COURT: What I would ask you to do is this: The State has to give notice of
intent to appeal within 30 days. If you will file a Motion to Dismiss along with the
order at this point, then, given the fact that I think jeopardy has attached, you
know  it would seem to me if they don't appeal it, then I will sign a dismissal at
that point.


 


 I don't want there to be a retrial unless there is something different and new or
unless the State prevails on appeal. 

 A few hours after the trial ended, the State requested that the court make formal findings
of fact and conclusions of law to assist the State in deciding whether to appeal.

 On February 23, the trial court executed and filed a written order (which was dated
February 6) that included mistrial and dismissal as dispositions of the case. The order was
entitled "Order Granting Defendant's Motion to Suppress, Dismissing the Case Because of
Insufficient Evidence to Sustain a Conviction, Declaring a Mistrial, and Discharging the Jury."
The order stated, in part:

 [T]he Court found bad faith and dismissed the charges against the defendant and
discharged the jury because the State had otherwise insufficient evidence to
sustain a conviction in light of the suppression being granted and the findings of
this court. ACCORDINGLY, IT IS THE ORDER of this Court that the Defendant's Motion to Suppress is granted, the State's case is dismissed due to bad faith
on the part of the evidence custodian of the Brownwood Police Department
resulting in insufficient evidence to sustain a conviction, a mistrial is declared,
and the jury is hereby discharged.


 On February 28, the trial court filed findings of fact and conclusions of law, one of which
was, "The Court concluded that there was insufficient evidence remaining as a matter of law to
sustain a conviction after the State's evidence was suppressed and accordingly, a mistrial was
declared, the case against the defendant was dismissed and the jury was discharged."

In the Court of Appeals


 The State appealed the trial court's orders and raised two points of error: (1) The trial
court erred in granting the Motion to Suppress because the appellee had not adequately proved
that the State acted in bad faith. (2) The trial court erred in declaring a mistrial as a result of the
suppression of evidence.

 The Court of Appeals held that the trial court erred in suppressing the evidence, and
therefore sustained the State's issues on appeal, set aside the trial court's order, and remanded the
case. (2) The Court's opinion did not discuss the declaration of a mistrial.

 The appellee filed a Motion for Rehearing, in which he raised the issue of jurisdiction for
the first time. The Court of Appeals overruled the motion.

The Parties' Arguments

 The appellee now argues, as he did in his Motion for Rehearing, that the Court of Appeals
lacked jurisdiction for three reasons: (1) Article 44.01(a) of the Code of Criminal Procedure does
not allow the State to appeal an order granting a mistrial; (2) Article 44.01(a)(5) does not allow
the State to appeal the grant of the Motion to Suppress after jeopardy has attached; and (3) the
State did not make the certification required by Article 44.01(a)(5) in order to appeal the grant of
the Motion to Suppress. 

 The State argues that the trial court's actions terminating the prosecution should be
interpreted as a dismissal of the indictment, appealable under Article 44.01(a)(1), because the
trial court indicated that it was "dismissing the case." In the alternative, the State suggests that
the trial court's actions could be interpreted as the grant of a new trial, appealable under Article
44.01(a)(3), because a trial court's use of the term "mistrial" often has been held to be the
functional equivalent of an order granting a new trial. The State further argues that, even if it did
not meet the requirements under Article 44.01(a)(5) to appeal the suppression ruling, the Court of
Appeals had jurisdiction to consider the suppression point of error once the State properly
invoked the Court's jurisdiction under Article 44.01(a)(1) or (3) to consider the termination of
prosecution point of error. 

 Jurisdiction over Motion to Suppress Point of Error 

 Article 44.01(a) of the Code of Criminal Procedure says, "The state is entitled to appeal
an order of a court in a criminal case if the order  (5) grants a motion to suppress evidence, a
confession, or an admission, if jeopardy has not attached in the case ." By expressly limiting a
State's appeal of the grant of a motion to suppress evidence to cases in which jeopardy has not
attached, the statute must be construed not to authorize a State's appeal of such a ruling that was
made after jeopardy had attached.

 In a jury trial, jeopardy attaches at the time the jury is empaneled and sworn. (3) Because the
trial court granted the motion to suppress after jeopardy attached in the present case, Article
44.01(a) did not authorize the State to appeal the ruling which was made thereafter. (4)

 The State contends, however, that if the Court of Appeals had jurisdiction over the
termination-of-prosecution point of error, the motion-to-suppress point of error could be
considered by the Court under its "extended jurisdiction." Because we hold below that the
jurisdiction of the Court of Appeals to consider the termination-of-prosecution point of error was
not properly invoked, we need not address the State's extended-jurisdiction theory. 

 Jurisdiction over Termination of Prosecution Point of Error

 The parties' primary arguments could be said to turn on the appropriate labels to attach to
the trial court's termination of the prosecution and the State's resulting authority to appeal under
Article 44.01(a). In the record and the briefs, four labels can be found. The trial court indicated in
its oral ruling that it was only discharging the jury. (5) The trial court's written order stated that, in
addition to discharging the jury, the trial court both dismissed the case and declared a mistrial.
Finally, the State now suggests that the trial court effectively granted a new trial. (6)

 But we begin by recognizing that the State's appeal of the trial court's actions violates the
law of double jeopardy. This Court's interpretation of Article 44.01 recognizes that double-jeopardy law serves as the key boundary to the State's right to appeal under the statute. We look
to Supreme Court decisions when we consider the limits of the State's right to appeal under
Article 44.01. (7) We presume that the legislature intended to enact a constitutional statute. We
should avoid an unnecessary construction of the statute that would give the State a right to an
appeal that would result in a prosecution that would violate the Double Jeopardy Clause.
Therefore we shall proceed directly to consider whether the Double Jeopardy Clause prohibits a
State's appeal of the trial court's actions, however they may be labeled for statutory purposes.

 A defendant's double-jeopardy protections are found in the Fifth Amendment to the
United States Constitution, which provides that no person shall be "subject for the same offense
to be twice put in jeopardy of life or limb." (8) The "controlling constitutional principle [of the
Double Jeopardy Clause] focuses on prohibitions against multiple trials." (9) Two conditions are
therefore necessary to implicate double jeopardy in the context of a State's appeal: (1) jeopardy
must have "attached," as when a jury is empaneled and sworn in a jury trial, and (2) the State's
appeal must threaten the defendant with an impermissible successive trial. (10)

 One of the most fundamental rules of double-jeopardy jurisprudence is that when a trial
ends in an acquittal, the defendant may not be tried again for the same offense. (11) Whether the
acquittal is "based on a jury verdict of not guilty or on a ruling by the court that the evidence is
insufficient to convict," any further prosecution, including an appeal by the prosecution that
would lead to a second trial, is prohibited. (12) Even where an acquittal is based on an "egregiously
erroneous foundation," (13) such as erroneous exclusion of evidence (14) or erroneous weighing of
evidence, (15) the acquittal bars appellate review of the ultimate disposition as well as the underlying foundation. (16)

 The Supreme Court of the United States has emphasized that what constitutes an
"acquittal" is not controlled by the form of the judge's action. (17) For jeopardy purposes, a
defendant is acquitted when "the ruling of the judge, whatever its label, actually represents a
resolution, correct or not, of some or all of the factual elements of the offense charged." (18) For
example, the United States Supreme Court held in Martin Linen that a judgment of acquittal,
entered by a trial court after a jury became "hopelessly deadlocked," was an acquittal in
substance as well as form despite the government's characterization of the trial court's action as a
mistrial. (19) In entering the judgment of acquittal, the trial court recorded its view that the
government "ha[d] failed to prove the material allegations beyond a reasonable doubt," and that
the defendant should be found not guilty. (20) Because the trial court evaluated the government's
evidence and determined that it was legally insufficient to sustain a conviction, double jeopardy
barred appeal of the acquittal. (21)

 In another example, this court held in State v. Moreno that an order granting the defendant's motion for directed verdict and dismissing the case was an acquittal. (22) A key witness for
the State in Moreno failed to appear on time for the trial. The State conceded that it had no
additional witnesses, but refused to rest its case and asked for more time since the key witness
literally had just arrived at the courthouse. The court refused to allow more time, and the
defendant moved for a directed verdict. The court granted the motion because the State had not
proved all of the elements of the offense. (23) Despite our opinion that the trial court's exclusion of
the witness was "unacceptable and inexcusable," we nonetheless recognized that the trial court
had ruled explicitly that the State's evidence had not met the required elements, and appeal from
such an acquittal was prohibited by the Double Jeopardy Clause. (24) 

 In contrast is the Supreme Court's decision in United States v. Scott that an appeal from a
dismissal was not jeopardy barred. (25) During his trial, Scott moved to dismiss counts of the
indictment against him on the grounds that his defense had been prejudiced by preindictment
delay. (26) The trial court granted Scott's motion at the close of all the evidence. The Supreme Court
held that, while the trial court's ruling may have been based on facts outside the indictment, the
ruling was not based on a conclusion that the government had not produced sufficient evidence to
establish guilt. (27) The Court therefore held that Scott suffered no injury cognizable under the
Double Jeopardy Clause when the government appealed the dismissal. (28) 

 Similarly, in State v. Stanley, this court held that an order dismissing a prosecution, on the
grounds that it proceeded under an unconstitutional ordinance, could be appealed by the State. (29)
The appellees in Stanley were tried for violation of a city ordinance prohibiting demonstrations in
school zones. The appellees filed a motion to dismiss before the trial on grounds that the
ordinance was unconstitutional, but the trial court decided to "carry the motion along until [it]
hear[d] the trial on the merits." (30) After the evidence was closed and the case was submitted to the
trial court as fact-finder, the court granted the appellees' motion to dismiss. We said that the trial
court's consideration of the guilt or innocence of the appellees "was contingent upon [the trial
judge's] first ruling upon the constitutional validity of the ordinance. In essence, having ruled in
the appellees' favor on that issue, he never reached the contingent issue of their guilt or innocence." (31) Because the trial court's order did not purport to resolve any of the factual elements of
the offense, we did not construe the trial court's order as an acquittal, and there was no double-jeopardy impediment to the State's appeal. (32)

 Here, there is little doubt that the trial court did not intend to acquit the appellee, in such
terms. In fact, the parties and the trial court explicitly discussed avoiding the term "directed
verdict of acquittal" in order to preserve the State's ability to appeal. But the intent and form of
the trial court's actions cannot trump the substance of the protections afforded by the Double
Jeopardy Clause. Whatever label we may affix to its actions, the trial court ultimately terminated
the prosecution based on its finding that the State's remaining evidence was legally insufficient
to convict the appellee. Not only did the trial court's oral ruling imply that it had made such a
finding, but its written order and conclusions of law were quite explicit: "[T]he Court found bad
faith and dismissed the charges against the defendant and discharged the jury because the State
had otherwise insufficient evidence to sustain a conviction in light of the suppression being
granted and the findings of this court." And the trial court's conclusions of law stated, "The
Court concluded that there was insufficient evidence remaining as a matter of law to sustain a
conviction after the State's evidence was suppressed and accordingly, a mistrial was declared, the
case against the defendant was dismissed and the jury was discharged." 

 This finding, in the words of the Supreme Court, "actually represents a resolution, correct
or not, of some or all of the factual elements of the offense charged." (33) The trial court explicitly
decided that the State's remaining evidence was legally insufficient to convict the appellee of the
offense and, on that basis, terminated the prosecution. Therefore, the trial court's actions were
functionally an acquittal for purposes of double jeopardy. (34) Whether there was an underlying
error in suppressing evidence is irrelevant; such an underlying error cannot be reviewed after an
acquittal for insufficient evidence. (35)

 We therefore reverse the decision of the Court of Appeals and remand this case to that
court for further proceedings not inconsistent with this opinion.


Delivered June 22, 2011.

Publish.
1. Four of the witnesses were Brownwood Police Department officers at the time of the offense. The officers
testified about the circumstances of the appellee's arrest, the seizure of a substance which appeared to be metham-phetamine from a vehicle in which the appellee was riding, and the submission of the substance to a DPS laboratory
for testing. Another occupant of the vehicle, Willie Calvin, Jr., testified that both he and the appellee possessed
methamphetamine at the time of the appellee's arrest. Finally, a DPS chemist testified on voir dire that a substance
attributed to the appellee was submitted for testing in May 2004, and nothing about the submission suggested that the
substance had been improperly handled or that the tests he performed were invalid. 
2. State v. Blackshere, 2008 Tex. App. LEXIS 6922 (September 18, 2008).
3. United States v. Martin Linen Supply Co., 430 U.S. 564, 569 (1977).
4. See State v. Schaeffer, 981 S.W.2d 515, 517 (Tex. App.-Austin 1998, no pet.) ("The practice of
considering pretrial motions for the first time after the trial has begun is strongly disfavored [because] the State is
deprived of the opportunity to appeal the unfavorable ruling."); George E. Dix & Robert O. Dawson, 43A Texas
Practice: Criminal Practice and Procedure § 43.217 (2d ed.) ("Since the trial judge is under no obligation to
rule on a motion to suppress before trial, this means a trial judge has almost if not total power to frustrate the State's
'right' to appeal by refusing to rule on the motion until after trial begins." ) (citing Schaeffer).
5. "But  the jury is discharged. The case itself - I did say dismissed, but I really meant dismiss the jury." 
6. The State mentions another possible argument, that "[o]nce jurisdiction is properly invoked on one issue,
an appellate court will acquire jurisdiction over the entire case," and cites the decision of the Texas Supreme Court
in Brown v. Todd, 53 S.W.3d 297 (Tex. 2001). The State fails, however, to make any argument for applying the
extended-jurisdiction doctrine to the context of State appeals of criminal matters under Article 44.01. The argument
is therefore inadequately briefed.
7. State v. Moreno, 294 S.W.3d 594, 599-600 (Tex. Cr. App. 2009).
8. The double jeopardy protections of the Fifth Amendment apply to the states through the Fourteenth
Amendment. Benton v. Maryland, 395 U.S. 784, 794 (1969). We have found such Fifth Amendment protections to
be "substantially identical" to those afforded under the Texas Constitution. Ex parte Mitchell, 977 S.W.2d 575, 580
(Tex. Cr. App. 1997).
9. Martin Linen, 430 U.S., at 569 ("At the heart of this policy is the concern that permitting the sovereign
freely to subject the citizen to a second trial for the same offense would arm Government with a potent instrument of
oppression. The Clause, therefore, guarantees that the State shall not be permitted to make repeated attempts to
convict the accused, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a
continuing state of anxiety and insecurity as well as enhancing the possibility that even though innocent he may be
found guilty. Society's awareness of the heavy personal strain which a criminal trial represents for the individual
defendant is manifested in the willingness to limit the Government to a single criminal proceeding to vindicate its
very vital interest in enforcement of criminal laws.") (internal punctuation and citation omitted).
10. Martin Linen, 430 U.S., at 569-70; State v. Moreno, 294 S.W.3d, at 597.
11. Martin Linen, 430 U.S., at 571; State v. Moreno, 294 S.W.3d, at 597-98.
12. United States v. Scott, 437 U.S. 82, 91 (1978); State v. Moreno, 294 S.W.3d, at 598. The critical
exception within this rule is that the state may appeal an acquittal rendered by the trial court following a jury verdict
of guilt. Appeal of such an acquittal is permissible because reversal on appeal would not subject the defendant to a
successive trial, but would rather simply reinstate the jury's original verdict of guilt. Wilson, 420 U.S., at 344-45,
352-53.
13. Fong Foo v. United States, 369 U.S. 141, 143 (1962).
14. State v. Moreno, 294 S.W.3d, at 600 (finding exclusion of witness testimony "unacceptable and
inexcusable," but barring appeal of acquittal based on resulting insufficiency of remaining evidence).
15. Fong Foo, 369 U.S., at 142 (finding acquittal based on poor credibility of prosecution witnesses and
improper conduct of prosecutor was "egregiously erroneous").
16. Sanabria v. United States, 437 U.S. 54, 68-69 (1978) (After erroneously interpreting an indictment, a trial
court excluded certain evidence relevant to the offense charged. The actions of the trial court were "properly to be
characterized as an erroneous evidentiary ruling, which led to an acquittal for insufficient evidence. That judgment of
acquittal, however erroneous, bars further prosecution on any aspect of the count and hence bars appellate review of
the trial court's error."); see also Moreno v. State, 807 S.W.2d 327, at 332 n.6 (Tex. Cr. App. 1991) ("Of course, it
is well settled that a verdict of acquittal can not be reviewed regardless of how egregiously wrong the verdict may
be."). 
17. Martin Linen, 430 U.S., at 571; see also Moreno v. State, 807 S.W.2d, at 332 ("The mere label attached
either to the defendant's motion or to the trial court's order ruling on same cannot determine its appealability under
18 U.S.C., Section 3731.  An appellate court, in order to determine its jurisdiction, must look to the effect of any
orders concerning an indictment or information, not what the trial court or the parties at trial have labeled such
orders."); State v. Moreno, 294 S.W.3d, at 598 (In determining whether an appeal is jeopardy barred, "we are not
bound by the trial judge's label; instead, we must examine the substance of the order.").
18. Martin Linen, 430 U.S., at 57. See Smith v. Massachusetts, 543 U.S. 462, 468 (2005); State v. Stanley,
201 S.W.3d 754, 760 (Tex. Cr. App. 2006).
19. 430 U.S., at 572.
20. Id.
21. Id.
22. 294 S.W.3d, at 600.
23. Id., at 596-97.
24. Id., at 600; see also Smith, 543 U.S., at 469 (finding acquittal where the trial court evaluated the
Commonwealth's evidence and determined that it was legally insufficient to sustain a conviction); Smalis v.
Pennsylvania, 476 U.S. 140 (1986) (finding acquittal where the trial court granted a demurrer at the close of the
prosecution's case and dismissed the charges on grounds that the evidence was legally insufficient to support a
conviction); Hudson v. Louisiana, 450 U.S. 40 (1981) (finding a successive prosecution violated double jeopardy
where the trial court granted a motion for new trial based on legal insufficiency of the evidence); United States v.
Sisson, 399 U.S. 267 (1970) (finding acquittal where a motion in arrest of judgment was granted based on
insufficient evidence adduced at trial); State v. Savage, 933 S.W.2d 497, 499 (Tex. Cr. App. 1996) (finding acquittal
where a motion for new trial was granted based on insufficiency of the evidence).
25. 437 U.S. 82 (1978).
26. Id., at 84.
27. Id., at 95.
28. Id., at 99.
29. 201 S.W.3d 754 (Tex. Cr. App. 2006).
30. Id., at 756.
31. Id., at 759.
32. Id., at 759-60.
33. Martin Linen, 430 U.S., at 571.
34. See, e.g., Smalis, 476 U.S., at 144 ("[A] ruling that as a matter of law the State's evidence is insufficient
to establish his factual guilt  is an acquittal under the Double Jeopardy Clause.").
35. Sanabria, 437 U.S., at 68-69.