Opinión disidente del Tribunal emitida por el
Juez Aso-ciado Señor Martínez Torres,
a la cual se une el Juez Asociado Señor Estrella Martínez.
No hay duda, de que quien que-brante las disposiciones de la Ley Núm. 54 merece recibir la debida sanción dispuesta por Ley, pero ello conforme a las Reglas impuestas para todos los ciudadanos en nues-tro ordenamiento legal y constitu-cional. Alejarnos de esa norma esen- *221 cial en nuestro sistema de derecho, nos colocaría precisamente en contra del ordenamiento que estamos llamados a defender.
Sentencia del Tribunal de Apelacio-nes, pág. 15, Apéndice, pág. 61.
En la Opinión que hoy se emite este Tribunal encuentra culpable a una persona, por primera vez, de un delito por el cual el foro primario lo absolvió. Lo anterior es contrario a la cláusula constitucional que prohíbe la doble exposición por el mismo delito. Art. II, Sec. 11 de la Constitución de Puerto Rico; Quinta y Decimocuarta Enmiendas a la Cons-titución de Estados Unidos, L.P.R.A., Tomo 1. Por los fun-damentos que expreso a continuación, disiento vehemente-mente, pero con mucho respeto, de la decisión de este Foro.
I
Según se deduce de la exposición narrativa estipulada de la prueba, el 29 de abril de 2008 el Sr. Abraham Ayala García llegó a la casa de la Sra. Moraima Vázquez Cotto, y allí profirió palabras soeces mientras golpeaba la ventana de la cocina y la puerta. Estos fueron compañeros consen-súales por seis años y procrearon dos hijas, aunque al mo-mento de los hechos llevaban poco más de un año separados. El señor Ayala García reclamó que tenía dere-cho a relacionarse con sus hijas. La señora Vázquez Cotto indicó que no podía buscarlas hasta que solicitara los do-cumentos relativos a las relaciones paterno-filiales. Acto seguido, la señora Vázquez Cotto llamó a la Policía y ob-tuvo una orden de protección.
Posteriormente, el 12 de mayo de 2008, mientras la se-ñora Vázquez Cotto compartía con su pareja actual y sus dos hijas en el balcón de su residencia, el señor Ayala Gar-cía llegó y estacionó a toda prisa el vehículo en que se encontraba. Luego de que se bajó del vehículo manifestó *222 que “[a]quí no va haber ‘break’ pa’ nadie, rompieron el cris-tal de la guagua de mi ‘mai’ y yo sé que fueron ustedes”. Al marcharse la señaló y le dijo, “a ti te voy a joder donde quiera que te coja”. Apéndice, pág. 7. La señora Vázquez Cotto manifestó que inmediatamente llamó a la Policía para notificar lo sucedido, ya que sintió temor por su vida, no solo por ese incidente, sino también por los episodios previos por los cuales había obtenido tres órdenes de protección. Declaró, además, que el señor Ayala García vi-vía cerca de su residencia, pero que durante las tres sema-nas que le tomó a la Policía arrestarlo, luego de la celebra-ción de la vista de causa probable para arresto, este no la buscó ni fue a su casa.
El mismo día, se presentaron dos denuncias contra el señor Ayala García. En una se le imputó violación al Art. 3.2 de la Ley Núm. 54 de 15 de agosto de 1989, conocida como Ley para la Prevención e Intervención con la Violen-cia Doméstica, 8 L.P.R.A. see. 632. En la segunda, se im-putó violación al Art. 3.3 de la Ley Núm. 54 (8 L.P.R.A. see. 633). No obstante, en la vista preliminar solo se encontró causa para acusar por el Art. 3.3 de la Ley Núm. 54, id. Es decir, no se encontró causa para acusar por el Art. 3.2 de la Ley Núm. 54, supra.
El 11 de agosto de 2008, luego de celebrarse el juicio en su fondo, el Tribunal de Primera Instancia resolvió que, conforme a la prueba presentada, se configuró el delito de maltrato, según tipificado por el Art. 3.1 de la Ley Núm. 54 (8 L.P.R.A. sec. 631). Consecuentemente, sentenció al señor Ayala García a cumplir una pena de reclusión de tres años.
El señor Ayala García apeló la decisión del tribunal sen-tenciador ya que dicho foro lo había hallado culpable por un delito distinto al imputado en la acusación, a pesar de no tratarse de un delito menor incluido. El Tribunal de Apelaciones acogió su planteamiento y revocó la sentencia dictada por entenderla contraria a derecho. Además, or-denó la excarcelación del señor Ayala García.
*223 Inconforme, el Procurador General acude ante este Tribunal. Señala que el Tribunal de Apelaciones erró al absolver al señor Ayala García, a pesar de que su función revisora según lo dispuesto en la Regla 213 de Procedi-miento Criminal, 34 L.P.R.A. Ap. II, exigía que modificara la sentencia apelada y dispusiera una sentencia por el de-lito de maltrato mediante amenaza, que fue el imputado y probado más allá de duda razonable. Este Tribunal expidió el auto de certiorari y hoy emite la decisión que motiva esta opinión disidente.
II
A. En nuestro ordenamiento jurídico, la acción penal se inicia con la determinación de causa probable para arresto o citación del imputado, según se regula en la Regla 6 de Procedimiento Criminal, 34 L.P.R.A. Ap. II. Pueblo v. Rivera Martell, 173 D.P.R. 601, 608 (2008). Desde que ello ocurre, “el tribunal adquiere jurisdicción sobre la persona del imputado y se considera que éste queda sujeto a responder por la comisión del delito” que se le imputa. íd. Véase, además, Pueblo v. Irizarry, 160 D.P.R. 544, 555 (2003).
Si lo que se imputa es un delito grave, luego de que se determine causa para arrestar al amparo de la Regla 6 de Procedimiento Criminal, supra, procede celebrar una vista para determinar si existe causa para celebrar un juicio. Regla 23 de Procedimiento Criminal, 34 L.P.R.A. Ap. II.
En esencia, el propósito de la vista al amparo de la Regla 23, supra, “es evitar que una persona sea sometida in-justificadamente a los rigores de un proceso penal. Ello se logra mediante la exigencia de que el Estado presente al-guna prueba sobre los elementos constitutivos del delito y sobre la conexión del imputado con su comisión”. Pueblo v. Fernández Rodríguez, 183 D.P.R. 770, 798 (2011). Véase, *224 además, Pueblo v. Rivera Vázquez, 177 D.P.R. 868, 875 (2010).
De igual forma, hemos mencionado que “si luego de eva-luar la prueba desfilada el juez se convence de que existe causa probable para acusar, debe autorizar que se presente la acusación en contra del imputado. De lo contrario, lo debe exonerar y ponerlo en libertad si estaba detenido”. Pueblo v. Rivera Vázquez, supra, pág. 875. Véanse, además: Pueblo v. Ríos Alonso, 149 D.P.R. 761, 766—767 (1999); Pueblo v. Rodríguez Aponte, 116 D.P.R. 653, 663 (1985).
Dicho de otro modo, la determinación de no causa sobre un delito en la etapa de vista preliminar, impide que el Ministerio Público presente la acusación correspondiente. Pueblo v. Rivera Vázquez, supra, pág. 875. Ahora bien, ad-viértase que en la vista preliminar el tribunal tiene auto-ridad para encontrar causa “por el delito que la prueba sustente y no necesariamente por el imputado”. Pueblo v. APS Healthcare of P.R., 175 D.P.R. 368, 396 (2009). Lo anterior incluye encontrar causa por un delito que sea menor e incluido en el que se imputó.
B. En ocasiones anteriores hemos estudiado la doc-trina del delito menor incluido. En particular, hemos ex-presado que para aplicar esta doctrina
... el delito menor debe estar comprendido en el mayor por el cual se le acusa y que los hechos expuestos para describir la comisión del delito mayor deben contener las alegaciones que son esenciales para constituir una imputación por el menor. Si el delito mayor incluye todos los elementos de hecho y los re-queridos por la Ley en relación con el menor, el mayor incluye al menor; pero si el delito menor requiere algún otro elemento indispensable que no es parte del delito mayor entonces el menor no está comprendido en el mayor. La prueba para de-terminar si un delito está incluido en otro es determinar si no se puede cometer el primer delito sin que necesariamente se cometa el segundo. Pueblo v. Oyóla Rodríguez, 132 D.P.R. 1064, 1071 (1993), citando a Pueblo v. Concepción Sánchez, *225 101 D.P.R. 17, 19 (1973). Véase, además, Pueblo v. Ramos López, 85 D.P.R. 576, 580 (1962).
El Art. 3.1 de la Ley Núm. 54, supra, indica:

Sec. 631. Maltrato

Toda persona que empleare fuerza física o violencia psicoló-gica, intimidación o persecución en la persona de su cónyuge, ex cónyuge, o la persona con quien cohabita o haya cohabitado, o la persona con quien sostuviere o haya sostenido una rela-ción consensual, o la persona con quien haya procreado un hijo o hija, para causarle daño físico a su persona, a los bienes apreciados por ésta, excepto aquéllos que pertenecen privati-vamente al ofensor, o a la persona de otro o para causarle grave daño emocional, incurrirá en delito grave de cuarto grado en su mitad superior.
El tribunal podrá imponer la pena de restitución, además de la pena de reclusión establecida.
Por su parte, el Art. 3.2 de la Ley Núm. 54, supra, define el maltrato agravado:

See. 632. Maltrato agravado

Se impondrá pena correspondiente a delito grave de tercer grado en su mitad inferior cuando en la persona del cónyuge, ex cónyuge o de la persona con quien se cohabita o se haya cohabitado, o con quien se sostiene o haya sostenido una rela-ción consensual, o con quien se haya procreado un hijo o hija, si se incurriere en maltrato según tipificado en este capítulo, mediando una o más de las circunstancias siguientes:
(a) Se penetrare en la morada de la persona o en el lugar donde esté albergada y se cometiere allí maltrato, en el caso de cónyuges o cohabitantes cuando éstos estuvieren separados o mediare una orden de protección ordenando el desalojo de la residencia a una de las partes; o
(b) cuando se infiriere grave daño corporal a la persona; o
(c) cuando se cometiere con arma mortífera en circunstan-cias que no revistiesen la intención de matar o mutilar; o
(d) cuando se cometiere en la presencia de menores de edad; o
(e) cuando se cometiere luego de mediar una orden de pro-tección o resolución contra la persona acusada expedida en auxilio de la víctima del maltrato; o
(f) se indujere, incitare u obligare a la persona a drogarse con sustancias controladas, o cualquier otra sustancia o medio que altere la voluntad de la persona o a intoxicarse con bebi- *226 das embriagantes;
(g) cuando se cometiere y simultáneamente se incurriere en maltrato de un menor según definido en las secs. 444 a 450n de este título, o
(h) si a la víctima se le obliga o induce mediante maltrato, violencia física o sicológica a participar o involucrarse en una relación sexual no deseada con terceras personas.
(i) Cuando se cometiere contra una mujer embarazada.
(j) Cuando se cometiere contra una persona menor de dieci-séis (16) años y la persona agresora sea de dieciocho (18) años o más.
El tribunal podrá imponer la pena de restitución, además de la pena de reclusión establecida.
Un análisis de los delitos antes citados revela, sin ambages, que el Art. 3.1 de la Ley Núm. 54, supra, es uno menor incluido en el Art. 3.2, supra. En esencia, el Art. 3.2, id., incluye la conducta que tipifica el Art. 3.1, supra, ade-más de unas situaciones específicas, que de configurarse, agravan la pena de cuarto grado en su intervalo superior, a la correspondiente de tercer grado en su mitad inferior.
C. En el caso que nos ocupa, se presentaron denuncias contra el señor Ayala García por los Arts. 3.2 y 3.3 de la Ley Núm. 54, supra. Sin embargo, solo se encontró causa para acusar por el Art. 3.3 y no por el Art. 3.2. Ello impidió que el Ministerio Público presentara acusación por este úl-timo delito, a saber, maltrato agravado. Por esa razón, era improcedente que el foro primario encontrara al acusado culpable del Art. 3.1 de la Ley Núm. 54, supra, que tipifica el maltrato.
Es decir, si el Ministerio Público no recibió autorización para presentar una acusación por el delito establecido en el Art. 3.2 de la Ley Núm. 54, supra, mucho menos el Tribunal de Primera Instancia podía encontrarlo culpable por el delito menor incluido estatuido en el Art. 3.1.
Por otro lado, es correcta la conclusión a la que arriban el Tribunal de Apelaciones y este Tribunal de que el delito estatuido en el Art. 3.1 de la Ley Núm. 54, supra, no es uno *227 menor incluido del Art. 3.3 de esa misma ley, supra. El Art. 3.3 de la Ley Núm. 54, supra, dispone lo siguiente:

See. 633. Maltrato mediante amenaza

Toda persona que amenazare a su cónyuge, ex cónyuge, a la persona con quien cohabita o con quien haya cohabitado o con quien sostiene o haya sostenido una relación consensual, o la persona con quien haya procreado un hijo o hija, con causarle daño determinado a su persona, a los bienes apreciados por ésta, excepto aquellos que pertenecen privativamente al ofen-sor, o a la persona de otro, incurrirá en delito grave de cuarto grado en su mitad superior.
El tribunal podrá imponer la pena de restitución, además de la pena de reclusión establecida.
Como indica la Opinión del Tribunal en las págs. 212-216, efectivamente el Art. 3.1 contiene elementos que no se configuran el Art. 3.3 y viceversa. El Art. 3.1 castiga el uso de la fuerza física, la violencia psicológica, la intimidación o la persecución para causarle daño a la víctima. En cambio, el Art. 3.3 penaliza al que amenaza con causar daño a la víctima. Así pues, como en el proceso penal la prueba no enmienda las alegaciones, fue totalmente desacertado que el Tribunal de Primera Instancia encontrara culpable al señor Ayala García de infringir el Art. 3.1 de la Ley Núm. 54, supra. Regla 38(d) de Procedimiento Criminal, 34 L.P.R.A. Ap. II; E.L. Chiesa Aponte, Derecho procesal penal de Puerto Rico y Estados Unidos, Bogotá, Ed. Forum, 1993, Vol. 3, Sec. 24.3, pág. 172.
III
A. La protección contra la doble exposición, de rango constitucional, cobija a todo imputado de delito en la me-dida en que se le garantiza no ser “puesto en riesgo de ser castigado dos veces por el mismo delito”. Art. II, Sec. 11 de la Constitución de Puerto Rico, L.P.R.A., Tomo 1, ed. 2008, pág. 343. Igual dispone la Enmienda Quinta de la Consti-tución de Estados Unidos al establecer que “nadie podrá ser sometido por la misma ofensa dos veces a un juicio ...”. *228 (Traducción nuestra).(1) En Benton v. Maryland, 395 U.S. 784 (1969), el Tribunal Supremo federal resolvió que la cláu-sula constitucional aludida aplicaba a los estados por con-ducto de la cláusula del debido proceso de ley contenida en la Enmienda Decimocuarta de esa misma Constitución.(2) Dicha garantía opera contra:
(i) [u]lterior exposición tras absolución por la misma ofensa;
(ii) [u]lterior exposición tras convicción por la misma ofensa;
(iii) [u]lterior exposición tras exposición anterior por la misma ofensa (tras haber comenzado el juicio, que no culminó ni en absolución ni convicción);
(iv) [c]astigos múltiples por la misma ofensa. Chiesa Aponte, op. cit., 1992, Vol. 2, Sec. 16.1, pág. 364. Véanse, además: Pueblo v. Rivera Cintrón, 185 D.P.R. 484 (2012); Pueblo v. Martínez Torres, 126 D.P.R. 561, 568-569 (1990).
Es conocido por todos que la interpretación que haga el Tribunal Supremo federal sobre cierta cláusula constitu-cional constituye el mínimo que los estados están obligados a garantizar. Pueblo v. Díaz, Bonano, 176 D.P.R. 601, 621 (2009). Claro está, en circunstancias apropiadas, “en Puerto Rico podemos ser más amplios y abarcadores que el Tribunal Supremo de Estados Unidos al interpretar una cláusula homologa de la Constitución federal”. Id. Véase, además, H.M.C.A. (P.R.), Inc., etc. v. Contralor, 133 D.P.R. 945, 974-975 (1993). Sin embargo, en el caso que nos ocupa, no se trata de ofrecer una factura más ancha; se trata de cumplir con la normativa clara que sobre el particular el Tribunal Supremo federal ha pautado. Veamos.
*229 B. Como manifestamos anteriormente, la cláusula constitucional que protege contra la doble exposición se manifiesta en cuatro dimensiones. Sin embargo, concen-tramos nuestro análisis en la protección contra ulterior ex-posición tras absolución por la misma ofensa, ya que es la que aplica a la controversia ante nos.
Una de las normas más fundamentales en la historia de la cláusula que protege contra la doble exposición es que una decisión de absolución no puede ser revisada, como error u otra forma, sin exponer dos veces a un acusado al riesgo de ser convicto. United States v. Martin Linen Supply Co., 430 U.S. 564, 571 (1977); Ball v. United States, 163 U.S. 662, 671 (1896). Cónsono con lo anterior, la juris-prudencia del Tribunal Supremo de Estados Unidos ha es-tablecido que luego de que una persona es absuelta a nivel de primera instancia no procede una apelación por parte del Ministerio Público. Kepner v. United States, 195 U.S. 100, 130 (1904), reiterado en Green v. United States, 355 U.S. 184, 188 (1957). Para ello no importa lo errónea que sea la sentencia dictada por el foro primario. Sanabria v. United States, 437 U.S. 54, 68-69 (1978). Véanse, además: United States v. Martin Linen Supply Co., supra, pág. 571; Fong Foo v. United States, 369 U.S. 141 (1962); Green v. United States, supra, pág. 188; Ball v. United States, supra, pág. 671.
Adviértase que una absolución, a diferencia de una con-vicción, termina la exposición para fines de la cláusula constitucional que nos ocupa. Justices of Boston Municipal Court v. Lydon, 466 U.S. 294, 308 (1984). Consecuente-mente, atar al acusado, que ya ha sido declarado absuelto, a un procedimiento posterior de determinación de hechos dirigido a declararlo culpable o inocente viola la cláusula constitucional que prohíbe la doble exposición. Smalis v. Pennsylvania, 476 U.S. 140, 145 (1986). Véase, además, Arizona v. Rumsey, 467 U.S. 203, 211—212 (1984).
*230 De igual forma, la cláusula contra la doble exposición protege por igual toda determinación de absolución, ya esté contenida en un veredicto emitido por un jurado o en un fallo emitido por un juez. Smith v. Massachusetts, 543 U.S. 462, 466-467 (2005). Véanse, además: Richardson v. United States, 468 U.S. 317, 325 esc. 5 (1984); Sanabria v. United States, supra, pág. 64; United States v. Martin Linen Supply Co., supra, pág. 573; United States v. Sisson, 399 U.S. 267, 290 (1970). La única excepción a la norma anteriormente esbozada se configura cuando el tribunal concede una moción de absolución perentoria, luego de que un jurado emite un veredicto de culpabilidad. Smith v. Massachusetts, supra. Véanse, además: Regla 135 de Pro-cedimiento Criminal, 32 L.P.R.A. Ap. II; Pueblo v. Colón, Castillo, 140 D.P.R. 564 (1996). En ese caso se permite re-currir al foro apelativo porque de revocarse la determina-ción de absolución, solo procedería reinstalar el veredicto que el jurado emitió. íd. Se protege así la decisión de los ciudadanos que compusieron el Jurado.
Ahora bien, en el caso presente, resulta neurálgico defi-nir lo que significa una absolución al amparo de la cláusula constitucional que protege contra la doble exposición. So-bre el particular, se ha expresado que es necesario cuestio-narse si la determinación que hizo el foro primario (o el jurado) es una absolución, aunque se caracterice de otra forma. United States v. Wilson, 420 U.S. 332, 336 (1975). Es decir, se debe precisar si la determinación del juez, o del jurado, “como quiera que sea rotulada, representa una de-terminación, correcta o no, de todos o algunos de los ele-mentos del delito imputado”. (Traducción y énfasis nuestros). United States v. Martin Linen Supply Co., supra, pág. 571.(3)
*231 En ocasiones puede suceder que se emita un fallo o ve-redicto de culpabilidad por un delito distinto al imputado en el pliego acusatorio, lo que constituye una absolución implícita. En este aspecto, el caso principal es Green v. United States, supra. Allí, se presentó acusación contra el señor Green por asesinato en primer grado. En las instruc-ciones al jurado, se indicó que el señor Green podía ser declarado culpable por asesinato en primer grado o en se-gundo grado. Luego de la deliberación, el jurado emitió un veredicto en que encontró al señor Green culpable de ase-sinato en segundo grado. Sin embargo, el veredicto guardó silencio en cuanto al cargo de asesinato en primer grado. Luego de que el tribunal aceptó el veredicto, sentenció al señor Green por asesinato en segundo grado.
Posteriormente, el Tribunal de Apelaciones de los Esta-dos Unidos para el Distrito de Columbia revocó y devolvió el caso para que se celebrara un juicio nuevo. En el se-gundo juicio, el señor Green fue acusado de nuevo por ase-sinato en primer grado. Se encontró culpable por ese delito, a pesar de que adujo la defensa de doble exposición. Aun-que hubo disidencia, el Tribunal de Apelaciones para el Distrito de Columbia confirmó la convicción por asesinato en primer grado. Así las cosas, el Tribunal Supremo de Estados Unidos expidió el recurso y revocó la decisión del Tribunal de Apelaciones. En esencia, resolvió que no pro-cedía la convicción por asesinato en primer grado porque hubo una absolución implícita por ese delito en el primer proceso que se celebró.
Por su pertinencia, citamos extensamente lo expuesto por el Tribunal Supremo federal, en Green v. United States, supra, págs. 190-191:
[E]l resultado en este caso no tiene por qué sustentarse única-mente en el supuesto, que consideramos legítimo, de que el jurado, por una razón u otra, absolvió al señor Green de ase-sinato en primer grado. Aquí, el jurado fue despachado sin expresar un veredicto expreso en ese cargo [asesinato en pri *232 mer grado] y sin el consentimiento del señor Green. Sin embargo, al jurado se le dio oportunidad plena de emitir un ve-redicto y no hay circunstancias extraordinarias que demuestren que se le impidió hacerlo. Por lo tanto, parece claro, en virtud de los principios establecidos de exposición previa, que la exposición de Green por el asesinato en primer grado llegó a su fin cuando el jurado fue despachado, por lo que no podía ser juzgado por ese delito nuevamente. Wade v. Hunter, 336 U.S. 684 (1949). En resumen, creemos que este caso no puede ser tratado de manera diferente, a efectos de exposición previa, de un caso en que el jurado emite un vere-dicto que expresamente indica: “Encontramos al acusado no culpable de asesinato en primer grado, pero culpable de asesi-nato en el de segundo grado”. (Traducción nuestra).(4)
Incluso, el Tribunal Supremo federal rechazó el argu-mento de que un acusado renuncia al planteamiento de doble exposición en cuanto a un delito, si apela la sentencia que emitió el foro primario en relación con otro delito por los mismos hechos. La contención del Estado era que un acusado debía estar dispuesto a ceder su protección consti-tucional en contra de la doble exposición por un delito si apelaba exitosamente la convicción errónea de otro delito por el cual había sido condenado. Green v. United States, supra, pág. 193. Al rechazar esa postura, ese Foro expresó:
La ley no debe, y en nuestro criterio no coloca al acusado en tan increíble dilema. Condicionar la apelación de un delito a una renuncia coaccionada de una alegación de exposición pre-via en cuanto a otro delito, equivale a una confiscación, en conflicto evidente con la prohibición constitucional en contra *233 de la doble exposición. (Traducción y énfasis nuestros). Íd., págs. 193-194.(5)
Lo resuelto en Green v. United States, íd., significa que en algunas circunstancias la convicción por un delito im-plica, para propósitos de la cláusula que prohíbe la doble exposición, la absolución implícita de otro. 6 LaFave Criminal Procedure 3rd Sec. 25.4(d), pág. 653 (2007).
La jurisprudencia reciente emitida por el Tribunal Supremo federal ha reiterado lo resuelto en Green v. United States, supra. Véase Blueford v. Arkansas, 132 S.Ct. 2044 (2012). En Blueford v. Arkansas, íd., decidido el 24 de mayo de 2012, el Tribunal Supremo de Estados Unidos resolvió que una determinación preliminar de absolución hecha por un Jurado adolece de finalidad para fines de la cláusula constitucional que protege contra la doble exposición. Ello, se debió a que en ese caso, la determinación de absolución que informó el jurado al tribunal no fue una decisión final sino interlocutoria, pues el Jurado siguió deliberando y al final no se pudo llegar a un veredicto. íd. Sin embargo, para fines de la controversia que nos ocupa, el Tribunal Supremo federal citó nuevamente como autoridad lo re-suelto en Green v. United States, supra, lo que conlleva a concluir que ese precedente sigue vigente con toda su fuerza.(6)
*234 Hace más de cincuenta años este Tribunal reconoció la norma que se pautó en Green v. United States, id. Especí-ficamente, lo hicimos en Pueblo v. Pérez Martínez, 84 D.P.R. 181, 183 (1961). Allí, se produjo un veredicto de cul-pabilidad por asesinato en segundo grado contra el Sr. Osvaldo Pérez Martínez, aunque el pliego acusatorio impu-taba asesinato en primer grado. En apelación, revocamos ese primer veredicto de culpabilidad por una instrucción errónea trasmitida al Jurado. Pueblo v. Pérez Martínez, supra, pág. 183 esc. 1. En el nuevo juicio, se encontró culpable al señor Pérez Martínez otra vez por asesinato en se-gundo grado. Así las cosas, distinguimos los hechos que teníamos ante nuestra consideración de los que tuvo el Tribunal Supremo federal en Green v. United States, supra. En particular, señalamos:
En el presente caso, sin embargo, el veredicto rendido en el primer juicio y el rendido en el nuevo juicio fue el mismo: culpable de asesinato en segundo grado. El primer veredicto, habiendo sido anulado a instancias del acusado, no constituye una exposición anterior. El acusado podía ser legalmente cas-tigado por el delito de asesinato en segundo grado en el se-gundo juicio, sin que ello violara su derecho constitucional ... [a] no ser puesto en riesgo de ser castigado dos veces por el mismo delito. Pueblo v. Pérez Martínez, supra, pág. 184.
Distinto habría sido si en el segundo juicio se hubiera encontrado culpable al señor Pérez Martínez de asesinato en primer grado. En ese supuesto, tal como ocurrió en Green v. United States, supra, se hubiese quebrantado la cláusula contra la doble exposición porque en cuanto al delito de asesinato en primer grado hubo una absolución implícita.
C. En el caso que nos ocupa, el Procurador General nos pide que determinemos que el Art. 3.1 de la Ley Núm. 54, supra, es un delito menor incluido en el Art. 3.3 de esa misma ley, supra. En cuanto a ese punto, ya determinamos que es inmeritorio lo que se nos solicita. En la alternativa, nos insta a modificar el fallo que emitió el foro primario *235 para que declaremos culpable al señor Ayala García de un delito que ningún otro tribunal inferior lo encontró culpable, a saber, el Art. 3.3 de la Ley Núm. 54, id.
Hoy la Opinión del Tribunal accede a “modificar” la sen-tencia y encontrar culpable al acusado de quebrantar el Art. 3.3, id., porque no le “convence el argumento que hace el señor Ayala García en la alternativa de que el foro de instancia, al declararlo culpable por el Artículo 3.1, decidió absolverlo del cargo por maltrato mediante amenaza por-que la prueba era insuficiente para que se determinara su culpabilidad por ese delito”. Opinión del Tribunal, pág. 218 esc. 55. Acto seguido, la Opinión del Tribunal, pág. 218 esc. 55, se embarca en un análisis psíquico de lo que alegada-mente razonó la Hon. María I. Cartagena Colón al mo-mento de emitir su fallo. En específico, se expresa:
[s]i el tribunal primario lo halló culpable del Artículo 3.1, que es más abarcador y requiere elementos adicionales a los que exige el Artículo 3.3, no es posible que lo hubiera determinado porque entendió que el maltrato mediante amenaza no se co-metió; menos arm cuando la prueba demostró que ocurrieron múltiples incidentes de maltrato psicológico y cuando el expe-diente sugiere que la mención del Artículo 3.1 en el fallo de culpabilidad fue un error involuntario.
Sin embargo, un análisis detenido, pausado y concien-zudo de la sentencia lacónica que emitió el foro primario y de la minuta de lo que ocurrió en ese día no permite, bajo ningún supuesto, arribar a la conclusión que llega hoy la Opinión de este Foro. Lo único que surge de esos documen-tos es que se encontró culpable al señor Ayala García de infracción del Art. 3.1 de la Ley Núm. 54, supra y no del Art. 3.3 de esa misma ley. De hecho, el Procurador General en su comparecencia no controvierte el hecho de que el señor Ayala García fue hallado culpable de infringir el. Art. 3.1 de la Ley Núm. 54, supra y no el Art. 3.3 de esa misma ley. Así pues, en este caso no cabe concluir que “el expe-diente sugiere que la mención del Artículo 3.1 en el fallo de *236 culpabilidad fue un error involuntario”. Opinión del Tribunal, pág. 218 esc. 55.
Además, en el caso que nos ocupa, la juez Cartagena Colón no explicó las razones por las cuales encontró culpable al señor Ayala García de quebrantar el Art. 3.1 y no el Art. 3.3. Así pues, solo contamos con la exposición narra-tiva estipulada de la prueba. En ella, se vierte lo que de-clararon las testigos Vázquez Cotto y Vanessa González. Sin embargo, eso no nos dice qué fue lo que el foro primario creyó. Ante ese cuadro, es totalmente impropio concluir que nos enfrentamos a un error puro de derecho, y mucho menos que “[l]a comisión del delito imputado, el de mal-trato mediante amenaza, se probó más allá de duda razonable”. Opinión del Tribunal, pág. 218.
Ahora bien, lo que sí demuestran la orden de encarcela-ción y la sentencia del foro primario es que el proceso fina-lizó para fines de la cláusula constitucional que prohíbe la doble exposición. Blueford v. Arkansas, supra. Dicho de otro modo, con la sentencia que emitió el tribunal prima-rio, terminó la exposición del señor Ayala García por el Art. 3.3 de la Ley Núm. 54, supra. Eso constituye una absolu-ción implícita. Blueford v. Arkansas, supra; Smith v. Massachusetts, supra; Green v. United States, supra.
Adviértase que cuando el Tribunal de Primera Instancia tuvo el caso sometido ante su consideración, tenía a su dis-posición la opción de encontrar al señor Ayala García culpable por el delito que se le acusó y no lo hizo. Entonces, si el proceso culminó —hubo una orden de encarcelación— y el Tribunal de Primera Instancia no lo encontró culpable del Art. 3.3 de la Ley Núm. 54, supra, la única conclusión lógica es que lo absolvió implícitamente. Si el foro primario no absolvió al señor Ayala García del Art. 3.3, supra, en-tonces, ¿qué hizo? Formular cualquier otro razonamiento implica resolver que la exposición del señor Ayala García en cuanto al Art. 3.3, id., quedó en un limbo jurídico por- *237 que no fue declarado culpable ni fue absuelto expresa-mente. Y peor aún, que esa exposición por el Art. 3.3, supra, se encuentra en un suspenso jurídico, del cual la Opi-nión del Tribunal guarda silencio, que nos permite decla-rarlo culpable de ese delito por primera vez, con solo una narración estipulada de la prueba, que no expresa si el Tribunal de Primera Instancia creyó todo o parte de lo que en ella se recoge.
Sobre el particular, ya el Tribunal Supremo de Estados Unidos resolvió en Green v. United States, supra, págs. 191-192, que es innecesario que un fallo o veredicto diga expresamente que se absuelve, para que se configure una absolución. De igual forma, ese Foro resolvió en Sanabria v. Unites States, supra, págs. 68-69, que por más manifies-tamente errónea que sea la decisión que emite un foro pri-mario, no se puede revisar y encontrar culpable al acusado en apelación, porque se violaría la cláusula constitucional discutida. Véanse, además: United States v. Martin Linen Supply Co., supra, pág. 571; Green v. United States, supra, pág. 188; Ball v. United States, supra, pág. 671. Eso res-ponde a que luego que recae un fallo o veredicto absoluto-rio, un procedimiento posterior de determinación de hechos dirigido a declarar culpable o inocente a una persona viola la cláusula constitucional que prohíbe la doble exposición. United States v. Martin Linen Supply Co., supra, pág. 570, reiterado en Smalis v. Pennsylvania, supra, pág. 146. Sin embargo, precisamente eso es lo que se hace en este caso.
Por último, es menester aclarar que el señor Ayala García no renunció al planteamiento de doble exposición por apelar la sentencia del foro primario que lo encontró culpable del Art. 3.1, supra. En esencia, ese fue el mismo planteamiento que hizo el Estado en Green v. United States, supra, págs. 193-194, y que el Tribunal Supremo federal rechazó expresamente.
*238 IV
Al igual que el Tribunal de Apelaciones, opino que todos debemos esforzarnos por cumplir con la clara política pública en contra de la violencia doméstica que permea toda la Ley Núm. 54. Véase Art. 1.2 de la Ley Núm. 54, 8 L.P.R.A. see. 601. Sin embargo, aunque soy consciente que las acusaciones por violencia doméstica han aumentado en los últimos tiempos, no puedo por ello negarme a aplicar la Constitución que juré defender. El día que haga eso habré faltado a mi deber de defender y proteger nuestro régimen constitucional. Los individuos tienen unos derechos consti-tucionales y la obligación de este Tribunal es protegerlos.
Por los fundamentos antes expuestos, disiento respetuo-samente de la decisión de este Tribunal de declarar culpable al señor Ayala García en primera instancia de un delito por el cual el Tribunal de Primera Instancia lo absolvió implícitamente. Por el contrario, confirmaría la decisión del Tribunal de Apelaciones que exoneró al señor Ayala García y ordenó su excarcelación.

 El texto original en inglés es el siguiente: “nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb”. U.S.C.A. Const. Amend. V.

 No hay controversia de que la garantía del debido proceso de ley de la Quinta Enmienda a la Constitución federal aplica a Puerto Rico. Rodríguez v. Popular Democratic Party, 457 U.S. 1, 7 (1982); Balzac v. Porto Rico, 258 U.S. 298, 312-313 (1922); Downes v. Bidwell, 182 U.S. 244, 283-284 (1901). Sin embargo, no se ha decidido si lo hace directamente o incorporada a través de la Enmienda Decimocuarta. Rodríguez v. Popular Democratic Party, supra; Examining Board v. Flores de Otero, 426 U.S. 572, 600-601 (1976); Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 668-669 (1974).

 La cita en inglés es la siguiente: “we must determine whether the ruling of the judge, whatever its label, actually represents a resolution, correct or not, of some or all of the factual elements of the offense charged”. United States v. Martin Linen Supply Co., supra, pág. 571.

 La cita en inglés es la siguiente: “the result in this case need not rest alone on the assumption, which we believe legitimate, that the jury for one reason or another acquitted Green of murder in the first degree. For here, the jury was dismissed without returning any express verdict on that charge and without Green’s consent. Yet it was given a full opportunity to return a verdict and no extraordinary circumstances appeared which prevented it from doing so. Therefore it seems clear, under established principles of former jeopardy, that Green’s jeopardy for first degree murder came to an end when the jury was discharged so that he could not be retried for that offense. Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974. In brief, we believe this case can be treated no differently, for purposes of former jeopardy, than if the jury had returned a verdict which expressly read: ‘We find the defendant not guilty of murder in the first degree but guilty of murder in the second degree’ ”. Green v. United States, supra, págs. 190-191.

 La cita en inglés es la siguiente: “[t]he law should not, and in our judgment does not, place the defendant in such an incredible dilemma. Conditioning an appeal of one offense on a coerced surrender of a valid plea of former jeopardy on another offense exacts a forfeiture in plain conflict with the constitutional bar against double jeopardy”. íd., págs. 193-194.

 El 11 de junio de 2012 el Tribunal Supremo de Estados Unidos expidió cer-tiorari en el caso Evans v. Michigan, Núm. 11-1327. El caso presenta la controversia de si la cláusula constitucional que prohíbe la doble exposición permite un juicio nuevo por un delito cuando en el juicio anterior el juez de primera instancia absolvió erróneamente por entender que ese delito requería un elemento adicional. En ese caso, el juez del foro primario concedió una moción de absolución perentoria a mitad de juicio, por entender erróneamente que el Ministerio Público no presentó prueba sobre un elemento del delito. Inconforme, el Ministerio Público volvió a presentar otro proceso por el mismo delito. El Tribunal Supremo de Michigan resolvió que no se configuró una violación a la cláusula constitucional que prohíbe la doble exposición porque la absolución se debió a un error de derecho.